TOWN OF CLARKSDALE *v.* EDWARD L. BROADDUS.

| 77 | 667 |
| 80 | 467 |
| 77 | 667 |
| 87 | 469 |

1. MUNICIPALITIES. *Bonds. Notice. Code* 1892, §§ 3014, 3015, 3016.

Before a municipality can rightfully issue municipal bonds, in any amount, under code 1892, §§ 3014, 3015, 3016, authorizing and regulating such issuance, it must first publish notice of the proposed issuance, as provided by § 3016, so that the taxpayers may petition against the same.

2. SAME. *Seven per centum. Election unnecessary.*

After notice of a proposed issuance of municipal bonds, if twenty per centum of the taxpayers do not petition against the same, the municipal authorities may issue bonds in an amount, including all outstanding bonds, not exceeding seven per centum of the assessed valuation of the taxable property in the municipality, without an election.

3. SAME. *Taxpayers protest. Election necessary.*

After notice of a proposed issuance of municipal bonds, if twenty per centum of the taxpayers, whether electors or not, petition against the same, the municipal authorities cannot rightfully issue the bonds in any amount until authorized by the affirmative vote of two-thirds of the electors.

4. SAME. *Ten per centum.*

After notice of a proposed issuance of municipal bonds even if there be no petition by the taxpayers against the same, where the issuance, including all outstanding bonds, will exceed in amount seven per centum, but not ten per centum, of the assessed valuation of the taxable property in the municipality, the bonds cannot rightfully be issued until authorized by the affirmative vote of two-thirds of the electors.

5. SAME. *Exceeding ten per centum. Illegal.*

Municipalities are without power, under the code, §§ 3014, 3015, 3016, to issue municipal bonds, including all outstanding bonds, in excess of ten per centum of the assessed valuation of the taxable property in the municipality.

6. SAME. *Injunction. Taxpayer.*

A resident taxpayer of a municipality may enjoin the wrongful issuance of municipal bonds.

FROM the chancery court, second district, of Coahoma county. · HON. A. McC. KIMBROUGH, Chancellor.

Broaddus, the appellee, was the complainant in the court below; the town of Clarksdale was defendant there. Without giving notice of the proposed issuance of bonds, as required by § 3016 of the code of 1892, the municipal authorities ordered an election to take the sense of the electors on the question whether or not to issue municipal bonds. The election resulted in favor of the issuance of the bonds, and the municipal authorities were proceeding to issue them when they were enjoined from further proceedings in the premises. A motion was made by the town to dissolve the injunction on bill and answer. The court below overruled the motion, and the town appealed to the supreme court.

*John W. Cutrer,* for appellant.

The sole ground relied on to disturb the action of appellants is that the election commissioners, appointed by the mayor and board of aldermen, did not publish any independent or special notice of the election held on November 6, 1899.

For the construction or purchase of electric plants, water works and sewerage systems, the proper municipal authorities have power to issue bonds, as provided by § 3016 of the code of 1892, where the total bonded indebtedness, counting that contemplated, shall not exceed seven per centum of the assessed valuation of the taxable property of the municipality.

If such bonded indebtedness exceed seven per centum, but not ten per centum, of such valuation, then the bonds contemplated shall not be issued "unless authorized by two-thirds of the qualified electors" of the municipality (§ 3014, code 1892).

The case presented by the record is one which requires the mayor and board of aldermen, before issuing the bonds, to secure authority by the affirmative assent of two-thirds of the qualified electors of the town of Clarksdale.

· It will be observed that the section last stated, making the requirement that two-thirds of the qualified electors shall authorize the issuance of bonds, does not specifically fix any method by which to test the sense of the electors upon the question presented or in any way indicate the manner in which the authorities shall secure the proper authorization from the requisite number of electors.

So far as the statute is concerned, the authorities are at liberty to pursue any course they might see fit to adopt to ascertain or secure the proper authorization from the electors. They might secure this authority by the presentation to them of petitions, resolutions, or at a town meeting, so that only the requisite number of electors joined in the petitions, indorsed the resolutions, or participated in the town meeting in sufficient numbers to carry an affirmative expression of two-thirds of their number for the proposed issue.

The sole condition precedent to the authority to issue bonds in the case made by the record is, therefore, only this: that two-thirds of the qualified electors of the municipality shall authorize them to be issued. The record shows that the mayor and board of aldermen have secured a fair expression of the will of the electors at the election held on November 6, 1899, and, regardless of all formalities, they have secured the affirmative authorization of more than two-thirds of the qualified electors of the town for the issuance of the bonds in controversy. It will be borne in mind that the statute, § 3014, nowhere lays down a method of procedure, or indicates any particular matter of form to be pursued. If such provisions were contained in the statute, they would be directory only, and if a correct result was reached, the failure to observe mere matters of form, or of formal procedure, would not render ineffectual an affirmative expression of two-thirds of the qualified electors upon the particular question submitted.

No formal notice of the election ordered is prescribed by the statute, and in any view that will be taken of the pro-

visions of the code on this subject, it will not be doubted but that if formal notice was so required, the same could be dispensed with provided the electors have actual notice of the election; and that, especially is this rule true if the result of the election would not have been different if all of the electors had actually voted. McCrary on Elections, secs. 142-153, and cases; *Little v. Langley,* 36 L. R. A., 723; *Adsit v. Secretary of State,* 11 L. R. A., 534; *Dishon v. Smith,* 10 Iowa, 212; *Commonwealth v. Smith,* 132 Mass., 289.

No counsel appeared in the supreme court for the appellee.

CALHOON, J., delivered the opinion of the court.

The mayor and board of aldermen of the town of Clarksdale, in order to ascertain whether two-thirds of the qualified electors would authorize the issuance of $37,000 of bonds, for water works, sewerage, and electric lights, proceeded in the first instance to pass an ordinance to order an election thirty days thereafter. This ordinance was published, election commissioners appointed, who published no notice of the election, the election held, and, out of a total of 144 qualified voters, 122 voted yea, 4 nay, and eighteen did not vote. Thereupon the board passed an ordinance ordering the bond issue. Mr. Broaddus, as a taxpayer and voter, enjoined, and from the decree of the chancellor overruling the board's motion to dissolve the injunction, the town of Clarksdale appeals.

It is admitted that the bond issue, including outstanding bonds, would exceed in amount seven per centum, but would not exceed ten per centum of assessed taxable values. The important matter is to decide whether or not the bonds would be valid, from all the proceedings of the board, which proceedings appear as exhibits to the bill for injunction. The decision must be based on the construction of §§ 3014, 3015, and 3016 of the code, especially of the first and last of these sections.

Sec. 3014 provides for bonds for divers purposes, among

which are waterworks, sewerage, and electric lights. It provides that where the bonds, including all outstanding bonds, shall, as in the case in hand, exceed seven per centum of the assessed taxable values, they shall not be issued "unless authorized by two-thirds of the qualified electors," but in no case to exceed ten per centum of such values. If this section stood alone the board might issue up to seven per centum without any vote of the electors, and perhaps might, as between seven per centum and ten per centum, issue bonds upon the authorization of two-thirds of the qualified electors ascertained otherwise than by an election.

Now, the title of § 3014, code 1892, is "Municipal bonds." Then we have § 3015, with the title, "The same; details of, etc.," which provides for dates of maturity, maximum rate of interest, denominational amounts, and so forth. Section 3016 is entitled, "The same; what to be done before issuing bonds," and is in the following words: "Before providing for the issuance of any bonds, the board shall publish notice of the proposal to issue the same in a newspaper published in the municipality, or having a general circulation therein, if none be there published, for three weeks next preceding, and if, within that time, twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued unless authorized by a majority of the electors voting, in an election to be ordered for that purpose."

The whole scheme of the chapter on municipalities is to exactly define and limit the powers of municipal legislatures, and protect the people against improvident appropriations of money and accumulation of debt. It is perfectly clear that § 3014 absolutely prohibits bonds to exceed 10 per centum of taxed values. No voting, no election, no sort of authorization, even if unanimous, could warrant this. It is also plain that up to 7 per centum, if that section stood alone, the board might issue bonds at will, and that, between 7 per centum and 10 per centum,

there must first be had the authorization of two-thirds of the qualified electors. But § 3016 is interposed, on the same subject, and fixes as a prerequisite to any provision for the issuance of any bonds that the board shall publish notice of their proposal to issue them for three weeks, so that within that time 20 per centum of the adult taxpayers, whether voters or not, may, if they wish, petition against such issuance, in which case there must be an election held in all cases, as we think, whether the bonds, with all others, exceed 7 per centum of taxable values or not. If they do not exceed the 7 per centum, a majority vote of qualified electors will authorize the issuance; if they do exceed the 7 per centum, it will require a two-thirds vote to authorize it; if they exceed 10 per centum, no vote can authorize it, though unanimous.

Construing §§ 3014 and 3016 together, we hold that, in any case the publication of the proposal to issue for three weeks to be indispensable, so that there may be time for taxpayers, as distinguished from voters, to consider, canvass the subject, and object if they see fit. This gives pause and time for consideration by the taxpayers, and the statute seems clearly to require it before the issue of any bonds can be provided for. After this, in case of excess of 7 per centum, an election must be held, whether 20 per centum of the taxpayers petition against the issuance or not, in order to ascertain whether two-thirds of the qualified electors authorize the issue.

*Affirmed.*