PRICE ET AL. *v.* SIMS ET AL.

[77 South. 649, Division A.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Consolidated districts. Elections. Bonds. Withdrawing names. Rights of signers.*

Signers to a petition addressed to a board of supervisors or a municipality can take their names therefrom by signing a counter-petition.

2. SCHOOLS AND SCHOOL DISTRICTS. *Consolidation. Bond issues.*
    Under chapter 197, Acts 1914, sections one and two amending Acts
    1912, chapter 159 (Hemmingway's Code, section 7357), making
    it the duty of the board of supervisors to issue bonds for building
    and repairing schools in consolidated school districts on petition
    of a majority of the tax-payers, and providing that such bonds
    shall be issued as provided in the chapter on municipalities, re-
    fers only to section 3416, Code 1906 (Hemmingway's Code, section
    5975), which provides a complete scheme for the issuance of
    bonds, and not to section 3419, Code 1906 (Hemmingways Code,
    section 5978), which requires, before the issuance of municipal
    bonds, that the board shall publish notice of the proposal, so
    that, when a petition under chapter 197, Acts 1914 (Hemming-
    way's Code, section 7357), contains a sufficient number of names,
    it is mandatory upon the Board to issue the bonds, and no elec-
    tion need be called or notice given.

APPEAL from the circuit court of Marion county.

HON. A. E. WEATHERSBY, Judge.

Suit by F. V. B. Price and others and H. J. Sims
and others. From a judgment of the circuit court
affirming a judgment of the board of supervisors
denying the petition for an election on the question of
issuing bonds for a consolidated school district, Price
and others appeal.

The facts are fully stated in the opinion of the court.

*B. S. Sylverstein* and *G. Wood MaGee,* for appellant.

No notice of the board's proposal to issue the bonds
was published for three weeks so far as the record in
this case shows. On this state of facts the trial court
held that inasmuch as a majority of the taxpayers
petitioned for the bonds, no election was necessary.

Was this ruling a correct interpretation of the
statutes under review? If so the case will be affirmed
and if not the case must be reversed.

Let's notice these statutes for a moment; section 4534,
Code 1906, makes provision for the issuance of bonds
for school purposes "in the manner provided in the
chapter on municipalities." In others words every

requirement of the statute providing for the issuance of bonds by a municipality must be observed in issuing the bonds in question.

Section 3419, Code of 1906, the section referred to in section 4534, prescribes in unmistakable terms the preliminary steps to be taken before issuing bonds. Quoting the section literally, we find it as follows: "Before providing for the issuance of any bonds, the board shall publish notice of the proposal to issue the same in a newspaper published in the municipality, or having a general circulation therein, if one be there published for three weeks next preceding; and if within that time twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued, unless authorized by a majority of the electors voting in an election to be ordered for that purpose. All the expenses of preparing the bonds, publishing the notices and holding the election shall be paid out of the municipal Treasury."

There can be but one construction placed upon this statute when twenty per centum of the taxpayers petition against the issuance of the bonds, and that is an election upon the question must be ordered. It is equally as mandatory that notice of the proposal to issue the bonds must be published for three weeks as required by the statute, and so far as this record shows no such notice was published at all.

The provisions of this section of the Code prevents snap judgment being taken against any taxpayer, in that a chance is given him to protest if he desires to do so, and gives him a chance to pause, deliberate and act upon the matter advisedly and not hastily and in an ill-advised way. And it is well that such is the case, for many men will readily sign a petition when presented to them and will subsequently, on reflection, withdraw their names therefrom. Such was the case

116 Miss.—44

as shown by this record with the fourteen men who signed the petition for the bonds and afterwards signed the petition asking that the bonds be not issued.

The trial court very properly held that these men had a right to withdraw from one petition and sign the other and that the board of supervisors committed an error in not counting them against the bond issue. See 28 "Cyc," page 1587, and authorities cited.

From an inspection of the record in this case, the lower court evidently took the position that because a majority of the taxpayers signed a petition asking that the bonds be issued, no election was required and no notice need be published.

If notice of the proposal to issue the bonds had been published as the statute requires, there might have been a clear majority of the taxpayers protesting against the bonds, and still an election would have to be ordered unless petitioners for the bonds had withdrawn their petition—in other words, an election is mandatory, for the question as to whether the bonds will be issued must be decided by and at an election and not on mere signatures to a petition.

The questions raised by this record are fully discussed by this court in the case of *Clarksdale* v. *Broadus,* 77 Miss. 667, and a mere reference to the announcement of the law as made in that case by this court is all-sufficient to reverse the case at bar.

So that it appears clear that the court below was in error in affirming the action of the board of supervisors in ordering the issuance of bonds in this case without first ordering an election, first, because no notice of the proposal to issue the bonds was published as required by the statute, and second, because more than twenty per centum of the voters had asked that the matter be submitted to an election to be ordered for that purpose, and for these reasons, we submit that the judgment of the court below should be reversed.

*Davis & Langston,* for appellees.

One hundred and sixty taxpayers of the Hub Consolidated School District, in accordance with chapter 197 of the Acts of the Mississippi Legislature of 1914, petitioned the Marion county board of supervisors to issue bonds for the purpose of erecting a school building, etc. Forty taxpayers of this district filed a counter-petition. Fourteen of the names appearing on the counter-petition also appeared on the petition asking for the bond issue. The agreed statement of facts show that regardless of where these fourteen names are placed, the petition for the bond issue is signed by a large majority of the resident taxpayers of that district. The petition for the bond issue was drawn under section two of chapter 197 of the Acts of 1914.

Counsel for appellants take the position that the fourteen names referred to above should be counted on the counter-petition, so as to give them twenty per cent. of the resident taxpayers of that district on the counter-petition, and that an election should be ordered so as to ascertain the will of the people of the district as is provided in the chapter on municipalities.

The chapter under which this petition was drawn points out clearly and unmistakably all steps necessary to be taken before the bonds are issued, then it points out the chapter on municipalities as to the manner of issuing these bonds; that is to say, how much interest the bonds shall bear; when they shall mature; how payable; in what amounts they shall be issued; that they shall be lithograph or engraved; shall be printed in two or more colors and show on their face the purpose for which they were issued, etc. See section 3416 of the Code of 1906.

The mayor and board of aldermen may pass a resolution of their own motion to issue bonds; then it is necessary to publish a notice of such intentions; then twenty per cent. of the taxpayers of the municipalities may pe-

tition against the bond issue, when it becomes the duty of such mayor and board of aldermen to call an election to ascertain the will of the people. If counsel's contention is correct, then the Acts of 1914, are inconsistent with the chapter on municipalities. The board of supervisors have ascertained the will of the people by the petition of such people. Then why should they do the same thing over again except in a different way?

Counsel for the appellants have much to say because the record does not show that a notice of the intention to issue bonds was published. In the first place if chapter 197 of the Acts of 1914, is to be taken as it reads, no such notice was necessary, and the cases cited on that point do not apply here. In the second place, if no such notice was published, and same should have been, the burden was on the appellants to put that fact in the record. The court below was not asked to pass on any such issue, the only issue that court was asked to pass upon, and the only issue which that court did pass upon, was the matter and things set out in the agreed statement of facts.

We submit this case with perfect confidence that it will be affirmed.

Sykes, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Marion county, affirming a judgment of the board of supervisors of that county, which order of the board of supervisors denied a petition signed by forty resident taxpayers, asking that an election be ordered to decide whether or not bonds should be issued by a consolidated school district. An agreed statement of facts is contained in the record. It is shown by the record that one hundred and sixty resident taxpayers of the Hub consolidated school district, containing more than sixteen square miles, petitioned the board of supervisors to issue bonds for said school district for the purpose of erecting

and eguipping a school building, the amount of bonds being five thousand, five hundred dollars in denominations of one hundred dollars each, to be known as the "Hub consolidated district bonds;" to be numbered from one to fifty-five inclusive; to bear date of their issuance, and be payable five years from the date of issuance; to bear interest at the rate of six per centum, payable semiannually, with interest payments being evidenced by coupons attached to the bonds; principal and interest being payable in lawful money of the United States. The petition was signed by one hundred and sixty resident taxpayers of the county, and was prepared under chapter 197, Acts of 1914, sections 1 and 2 thereof, which read as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that Senate Bill No. 79, chapter 159, of the acts of the legislature of 1912, be amended so as to read as follows:

"That the board of supervisors of any county be and the same is hereby authorized to issue bonds of the county, a supervisor's district, or a school district containing not less than sixteen (16) square miles, excluding in each case the territory embraced within separate school districts, for the purpose of erecting, repairing and equipping school buildings for the county, a supervisor's district, or a school district as the case may be.

"Sec. 2. Whenever a majority of the resident taxpayers of a county, of a supervisor's district, or of a school district containing not less than sixteen (16) square miles shall petition the board of supervisors to issue bonds for the purposes hereinbefore stated the board of supervisors of such county shall issue bonds of the county, of a supervisor's district or of a school district according to the direction of the petitioners, not to exceed five per centum (5 per cent) of the assessed value of the county, if it be for the county; or of the district if it be for a supervisor's district, or of a school

district if it be for a school district, said bonds to be issued in the manner provided in the chapter on municipalities. When a county, a supervisor's district or school district shall become obligated through the sale of bonds as indicated herein, it shall be the duty of the board of supervisors to levy a tax annually on the taxable property of the county or supervisor's district or school district as the case may be, sufficient to pay the interest on said bonds and to create a sinking fund for their redemption.''

These sections are also found in Hemingway's Code, sections 7356, 7357.

A petition asking that the board order an election upon the question of whether or not these bonds should be issued was then filed with the board of supervisors. Fourteen of the signers of this counter-petition had also signed the petition asking for the issuance of the bonds. The agreed statement of facts shows that the forty resident taxpayers who signed the counter-petition constituted more than twenty per centum of the adult resident taxpayers of the district. It is further shown that there were one hundred and ninety-six resident taxpayers in said district. The board of supervisors in their order declining to call an election, held that these fourteen taxpayers who signed the counter-petition, and who had also signed the original petition asking for the issuance of the bonds, had no right, by the signing of the counter-petition, to take their names from the original petition. In this ruling the board committed error. This court has uniformly held that signers to a petition addressed to a board of supervisors or a municipality can take their names therefrom by signing a counter-petition. Subtracting these fourteen names from the one hundred and sixty taxpayers who signed the petition leaves still upon the original petition one hundred and forty-six signers. There being only one hundred and ninety-six resident taxpayers in the school district, this

then left upon the original petition many more than a majority of these taxpayers.

The question for decision, then, is whether or not section 2 of the act above quoted (section 7357, Hemingway's Code) is a complete scheme in itself, providing when these bonds shall be issued by the board, or whether that part of this section, which reads, "Said bonds to be issued in the manner provided in the chapter on municipalities," merely refers to the details of the issuance of the bonds as set forth in section 3416, Code of 1906 (section 5975, Hemingway's Code), or also refers to section 3419, Code of 1906 (section 5978, Hemingway's Code), which provides, in short, that before the issuance of any municipal bonds, "the board shall publish notice of the proposal to issue the same in a newspaper . . . for three weeks next preceding; and if, within that time, twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued, unless authorized by a majority of the electors voting in an election to be ordered for that purpose." The issuance of these bonds by a municipality, referred to in section 3419, a part of which is above quoted, is dealing with the question where the mayor and board of aldermen of the municipality, on their own initiative, without any petition of the taxpayers to do so, issue these bonds. The taxpayers are not consulted in the first instance, nor have they any voice in passing upon the desirability of the issuance of the bonds. They are given the right to protest against the issuance, and if twenty per cent. so protest, then an election will be called. This scheme is quite different from the one under consideration. Chapter 197, Laws of 1914 (section 7356 et seq., Hemingway's Code), provides a complete scheme for the issuance of the bonds, save that the details of the same are governed by section 3416, Code of 1906 (section 5975, Hemingway's Code). The only manner provided in the act under discussion for the issuance

of these bonds is upon the petition of a majority of the taxpayers. The resident taxpayers, by their petition, are given the right to say whether or not these bonds shall be issued, and when a majority of them so signify by the petition, and do not take their names from the petition by a counter-petition, then, under this act, it is mandatory upon the board of supervisors to issue the bonds. No notice by publication is required under this act before the issuance of the bonds; in fact there is no reason for any publication, because the resident taxpayers of the district have already expressed by petition their desire to have these bonds issued and the amount for which they are to be issued. The reason for the publication of the issuance of the bonds under section 3416 of the Code (sec. 5975, Hemingway's Code) is to give the taxpayers the right to protest, if they so desire, they having had no voice in the first instance as to the desirability of the issuance of these bonds. This chapter 197, Acts of 1914 (section 7356 et seq., Hemingway's Code), is an amendment to chapter 159, Acts of 1912. The material difference between the act of 1912 and the one under consideration is that in the act of 1912 it was left to the discretion of the board to issue these bonds after the petition of the majority of the resident taxpayers. The act of 1914, however, takes away the discretion of the board of supervisors, and now makes it mandatory upon the board to issue these bonds upon the petition of the requisite number of resident taxpayers. The lower court correctly held that the board of supervisors was in error in failing to take the fourteen names of the signers of the second petition, who also signed the first petition, from the first petition; and was also correct in holding that the said petition still contained a majority of the resident taxpayers of the school district, but that the order of the board was proper in denying the counter petition and failing to call an election. It follows that the judgment of the circuit court is affirmed.

*Affirmed.*