BARRETT ET AL. *v.* CEDAR HILL CONSOL. SCHOOL DIST. ET AL.

[85 South. 125, In Banc. No. 21280.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Bond statute held to apply to consolidated district including less than 25 square miles.*

   Chapter 172, Laws 1918, providing that any county, supervisor's district, or school district containing not less than 16 square miles and having an assessed valuation of one hundred thousand dollars may issue bonds under prescribed conditions, applies to consolidated school districts having less than 25 square miles of territory.

2. SCHOOLS AND SCHOOL DISTRICTS. *Election by qualified electors prerequisite to issuance of bonds.*

   Chapter 172, Laws 1918, and chapter 209, Laws 1918, must be construed together, and, when so construed, require an election by the qualified electors as a prerequisite to the issuance of school district bonds.

3. STATUTES. *Statutes in pari materia construed together.*

It is a settled rule of statutory construction that all statutes *in pari materia* must be considered together, and the legislative intent determined by a consideration of all such statutory provisions. This is true whether the statutes were enacted on the same day or not.

4. SCHOOLS AND SCHOOL DISTRICTS. *Election in consolidated district not at convenient public place is void.*

Section 4004, Hemingway's Code (Laws 1916, chapter 194), provides that elections affecting consolidated schools shall be held at the schoolhouse of the district. This statute contemplates that the election shall be at a public place where all electors may freely exercise their right, and that such election shall be reasonably convenient, and is mandatory'; and an election held at another and private place is void.

5. CONSTITUTIONAL LAW. *School laws held not to deny equal protection to white and colored races; laws relating to bond issue held not to take property without due process.*

The laws of the state providing for consolidated schools do not discriminate between the white and colored races, and·do not deny the equal protection of the law, nor take property without due process of law, and the facts in the record do not show discrimination in its administration so as to make it operate in an unconstitutional manner.

APPEAL from circuit court of Lee county.

HON. C. L. LONG, Judge.

N. F. Barrett and others, as taxpayers of Cedar Hill Consolidated School District, appealed from an order of the board of supervisors, directing an issuance of bonds to equip a school building in such district. From a judgment affirming the order, Barrett and others, taxpayers, appeal. Reversed and remanded.

*W. D. & J. R. Anderson,* for appellants.

*Roberts & Hallam, amici curiæ.*

*Mitchell & Clayton,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal by certain taxpayers of the consolidated school district from a judgment of the circuit court sustaining an order of the board of supervisors, ordering the issuance of ten thousand dollars school bonds for the purpose of equipping a school building for said district under the provisions of section 1, chapter 172, Laws of 1918. The Cedar Hill Consolidated School District was created by the county school board by consolidating two school districts and adding thereto certain other territory. This district was created by the school board on the 27th day of March, 1917.

In the summer of 1918 a petition signed by a majority of the taxpayers of said consolidated school district filed a petition with the board of supervisors, 'praying for the issuance of bonds in the sum of ten thousand dollars, the said district having the requisite territory and assessed valuation under chapter 172, Laws 1918. The board and superintendent of education canvassed the petition and the assessment rolls, and found that a majority of the taxpayers of said district had so petitioned, and thereupon the board entered an order finding said facts, and gave notice of its intention to issue such bonds in said amount, which notice was published, but no protest was filed by the next meeting. The board being of the opinion that an election was necessary under the provisions of chapter 209, Laws of 1918, notwithstanding that there was no petition against the issuance of the bonds, ordered an election to be held in the said district, and the election commissioners ordered an election to be held on the 29th day of July, 1918, at S. A. McCarley's store, within such district. The election so ordered was held at the said place on the said date, but some confusion arose as to the proper poll-books to be used at said election, and it appears that there had been a new registration, but the old registra-

tion book and pollbooks were used instead of the new ones. It appeared, however, that a majority of all of the electors of said school district who were qualified electors voted affirmatively in favor of the bond issue. Some few voters who were not on the pollbooks were refused the right to vote, but those voting against the bond issue and those not voting who were entitled to vote taken together amounted to less than one-half of the qualified electors of the school district. The election commissioners certified to the board of supervisors that a majority of the voters voting in said election voted in favor of the issuance of the bonds. At the next meeting of the board the opponents of the bond issue appeared and contested the right to have the said bonds issued, and introduced much testimony upon the several questions involved, but the board entered an order, directing the issuance of said bonds, from which order the contestants appealed to the circuit court, where the cause was tried on a bill of exceptions and a judgment entered, affirming the order of the board of supervisors, from which judgment appellants prosecute this appeal.

It is contended by the appellants that there was no authority to issue the bonds under chapter 172, Laws of 1918, because the school district here involved is a consolidated school district, and it is contended that a consolidated school district does not come within the purview of chapter 172, Laws of 1918, but that for a consolidated school district to issue bonds it must have an area of at least twenty-five square miles of territory, under the provisions of chapter 180, Laws of 1916 (section 4002, Hemingway's Code), and that a consolidated school district is a distinct and separate system of schools from the general public schools, and has privileges which other common schools do not have, having all of the privileges of separate school districts under section 4535, Code of 1906.

The first question to be determined, then, is whether or not a consolidated school district comes within the terms and purview of chapter 172, Laws of 1918. Sections 1 and 2 of that act read as follows:

"Section 1. Be it enacted," etc., "that house bill No. 92, chapter 197, of the acts of the legislature of 1914, be amended so as to read as follows:

"That the board of supervisors of any county is authorized to issue bonds of the county, a supervisor's district or a school district containing not less than sixteen (16) square miles, or of any school district with an assessed valuation of not less than one hundred thousand dollars ($100,000) excluding in each case, the territory embraced within separate school district, for the purpose of erecting, repairing and equipping school buildings for the county, a supervisor's district, or a school district as the case may be.

"Sec. 2. Whenever a majority of the resident taxpayers of a county, of a supervisor's district, or of a school district containing not less than sixteen (16) square miles, or of any school district with an assessed valuation of not less than one hundred thousand dollars ($100,000), shall petition the board of supervisors to issue bonds for the purpose hereinbefore stated, the board of supervisor's district or of a school district, according to the direction of the petitioners, not to exceed five per centum (5%) of the assessed value of the county, if it be for the county; or of the district, if if it be for a school district, said bonds to be issued in the manner provided in the chapter on municipalities."

It will be noted that the language of this act is broad and comprehensive, and in its terms excludes only separate school districts. It is comprehensive enough, and its language, unless restricted by interpretation or by other statutes, would include consolidated schools as well as common schools. The law with reference to consolidated schools does not limit the territory of a

consoldiated school district to more than twenty-five square miles, but a consolidated district is simply the consolidated school district to more than twenty-five as held by us in *Trustees of Waldon School* v. *Covington County,* 115 Miss. 117, 75 So. 833. The county school board has full jurisdiction to consolidate two or more school districts. There is no petition or procedure mapped out by law to govern their action in so doing. They may or may not create one according to their own judgment of the propriety and necessity of the case. It has been the practice to consolidate schools without reference to the area being more or less than twenty-five square miles. Chapter 4002, Hemingway's Code, simply provides that a consolidated school district containing not less than twenty-five square miles may, on the petition of a majority of the electors of a consolidated school district, and on the approval of the county school board have the tax levy made and bonds issued for the purpose therein named, and where these things are done it has the privileges accorded to a separate school district. This provision in no wise conflicts with chapter 172, Laws of 1918. And a consolidated school district having less than twenty-five square miles may operate under the provisions of chapter 172, Laws of 1918, in issuing bonds for the purposes therein mentioned. The Cedar Hill Consolidated School District has only seventeen square miles of territory, and it has none of the privileges accorded to consolidated school districts having twenty-five square miles or more area under section 4002 and 4003, Hemingway's Code (chapter 180, Laws of 1916). The consolidated school district in each case has the privilege of transporting pupils living more than two miles from the school building to and from school, but outside of this privilege it has no privilege not accorded to the common public schools. It has the same curriculum, the same school term, and in all other respects is like the common school existing

prior to the enactment of the law, giving the privilege of transporting pupils to such schools as the county school board sees proper to consolidate and decree to be a consolidated school district. We hold that a consolidated school district having less than twenty-five square miles of area comes within the purview and purpose of chapter 172, Laws of 1918.

The next question involved is whether an election was required at all to issue the bonds involved in the present suit. This court held in *Price* v. *Sims*, 116 Miss. 687, 77 So. 649, that an election was not necessary under chapter 197, Laws of 1914, which was chapter 172 before the amendment of 1918. That decision, however, was made prior to the enactment of chapter 209, Laws of 1918, and the amendment of chapter 197, Laws of 1914, being chapter 172, Laws of 1918. These two acts each became effective on March 28, 1918. The appellee contends that, inasmuch as two acts became effective on the same day, chapter 209, Laws of 1918, in no wise affects the law as it is announced in *Price* v. *Sims;* while the appellant contends that the two acts must be construed together, and, where one is silent and the other positive as to the necessity of an election to issue bonds, that the provisions of chapter 209, requiring an election, must be read into and be taken as a part of chapter 172, Laws of 1918. The rule is that where there are several statutes *in pari materia* they are all, whether referring to each other or not, to be taken and considered and construed together. 26 Am. & Eng. Ency. of Law (2d Ed.), 620, 621; *Scott* v. *Searles*, 1 Smedes & M. 590; *Clements* v. *Anderson*, 46 Miss. 581; *State* v. *Dickinson*, 12 Smedes & M. 579; *White* v. *Johnson*, 23 Miss. 68; Black on Interpretation of Laws, 207, 208. We are therefore of the opinion that an election was necessary to the validity of the bond issue involved herein.

This brings us to the consideration of the next contention that the election was illegal and void because

held at McCarley's store instead of at the Cedar Hill schoolhouse. Section 4004 Hemingway's Code (chapter 194, Laws of 1916), provides that ''such election shall be held at the schoolhouse of said district.'' The appellant contends that, the statute having fixed the place of the election at the schoolhouse in the consolidated school district, it is mandatory that the election be so held; that neither the board of supervisors nor the election commissioners can direct the election to be held at any other place. It appears from the testimony that McCarley's store is from a quarter to one-half mile distant from the schoolhouse, and that it is not in a town or village, but is simply a country store and private property.

The appellee contends that the variance is immaterial because a majority of all of the qualified electors of the consolidated school district are shown affirmatively to have appeared and voted in favor of the bond issue, and that it is immaterial when a majority of the electors have voted affirmatively for the bond issue that the election was held at the wrong place, because, it is contended the sole purpose of the election is to determine the will of the electorate. In our view the legislature had a right to prescribe where the election should be held, and it is not for us to inquire into the wisdom of the legislative action. But it is our duty to give effect to its enactment. The general rule is that the time and place are two essentials to be regarded in holding elections. These are fundamental, while other regulations may be treated as irregularities, which will not defeat the election where it affirmatively appears that no harm was done. Our court has, we think, settled the principles as to the place of holding an election in *Harris* v. *State*, 72 Miss. 960, 18 So. 387, 33 L. R. A. 85, which case defines the meaning of the word ''at'' as used in a similar statute, and held that, where the board of supervisors ordered an election, sitting at a place within one hundred yards of the courthouse

was void because the act was not done "at the court-house," as required by statute. The principle underlying this holding is that the board is exercising a special statutory power, and must conform to all the affirmative requirements in exercising such statutory power. *Johnson v. Futch,* 57 Miss. 73; *Lewis v. Bank,* 64 Miss. 727, 2 So. 243; *Bolivar County v. Coleman,* 71 Miss. 832, 15 So. 107. See, also, the general announcement that place is essential to the validity of an election, and that statutes fixing the place of an election are to be construed mandatorily. 10 Am. & Eng. Ency. of Law, 684; 15 Cyc. 341; *State v. Russell,* 34 Neb. 116, 51 N. W. 465, 15 L. R. A. 740, 33 Am. St. Rep. 625; 15 Cyc. 342, and notes; *Black v. Pate,* 130 Ala. 514, 30 So. 434; *Heyfron v. Mahoney,* 9 Mont. 497, 24 Pac. 93, 18 Am. St. Rep. 757; *Williams v. Potter,* 114 Ill. 628, 3 N E. 729; *People v. Board of Sup'rs,* 185 Ill. 288, 56 N. E. 1044; *Word v. Sykes,* 61 Miss. 649; McCrary on Elections (2d Ed.), section 114, p. 128.

The proposition that the irregularity should not affect the validity of the bond issue because it is shown affirmatively that a majority of the voters voted therefor is settled adversely to the proponents of the bond issue in *Clarksdale v. Broaddus,* 77 Miss. 667, 28 So. 954. In that case, which was a municipal bond issue in which the town had ordered an election to pass upon the authority to issue thirty-seven thousand dollars of bonds for waterworks, sewerage, and electric lights, the board passed an ordinance to have an election thirty days thereafter. This ordinance was published, election commissioners appointed, who published notice of the election, and the election was held; and out of the total of one hundred and forty-four qualified voters registered within the town one hundred and twenty-two voted for the bonds, four voted against them, and eighteen did not vote at all; and the bonds were ordered issued by the board. Broaddus enjoined, an the court held that because of the failure to publish a notice of their intentions to issue the

bonds the election was void, notwithstanding it affirmatively appeared that an overwhelming majority of the qualified electors had voted affirmatively for the bond issue. We think, therefore, that the statute requiring the election to be held at the schoolhouse in the district, a public place where every citizen had a right, not only to appear, but to exercise his right of persuasion on all electors undisturbed and unhampered, is not in legal effect the same as holding the election in a private place, where an elector might be disinclined to go at all, or might be intimidated and overreached if he did go, and therefore that the election held at such private place, not within the limits of the school building or grounds, is not the same thing as an election held at the right place. See *Kibbe* v. *Benson,* 17 Wall. 624, 21 L. Ed. 741. · We, therefore are of the opinion that the election was void.

The fourth point raised by the appellant is that the election was void because held without the legal pollbooks. We deem it unnecessary to pass upon this because it is presumed that if a new election is held the regular poll books will be used.

It is next contended that a majority of the resident taxpayers of the district did not petition for the issuance of the bonds. We are of the opinion, after examination of all of the testimony in the record, that a majority of the taxpayers did petition for the bond issue. The order of the board and the bill of exceptions, we think, sustain the finding of the board.

It is next contended that the act authorizing the bond issue was void because it discriminates against the people of the colored race, notwithstanding the act itself makes no discrimination between the white and colored races; but it is contended that, as administered by the authorities, it is the settled purpose of the authorities not to create consolidated schools for the colored race. There is not sufficient showing made in the record to raise this question for our consideration. Each school board, in

each of the several counties, have full power to create consolidated schools for either race or both races. It affirmatively appears in the present case that there are ample school facilities for the members of the colored race. These schools have the same curriculum as the common schools for the white race. No petition has ever been presented to a school board by members of the colored race to have a consolidated school for colored children established. It has long been the practice of all of the states to give educational facilities to some of its citizens which are not usually given to other citizens. Thus colleges and universities are supported by the state, notwithstanding it is known that a great majority of the children of the state will never be able to attend them. People who have no children are taxed for school purposes to educate children of other people; corporations are taxed for school purposes also. In this state we have public schools for the membership of the colored race, ranging from rudimentary beginnings to graduation in all college courses. There is neither discrimination in the law nor, so far as this record shows, in the administration of the laws against members of the colored race. For the reasons indicated the judgment will be reversed and remanded.          *Reversed and remanded.*