BOARD OF SUPERVISORS OF SIMPSON COUNTY v. WALKER *et al.*

[89 South. 260, No. 21962.]

MANDAMAS. *Schools and school districts.* .*Petitioners may withdraw from petition for tax levy before the board of supervisors has passed thereon; county school board cannot make final order adjudging petition for tax levy sufficient, but board of supervisors has jurisdiction to pass thereon mandamus will not lie to compel the board of supervisors to make a tax levy under a petition adjudged by it to be insufficient.*

Under chapter 170, Laws 1920, providing that on the petition of a majority of the qualified electors of a consolidated school district, and on the approval of the county school board, the board of supervisors of the county shall levy the tax etc., the petitioners may withdraw from the petition at any time before the board of supervisors pass on the petition. The county school board cannot make a final order adjudging the sufficiency of the petition. The board of supervisors has jurisdiction to pass on the question as to whether the petition, at the time it passes on the question, contains the required majority, and if it adjudges the petition has an insufficient number of signers, mandamus will not lie to compel the board to make the levy.

APPEAL from circuit court of Simpson county.

W. H. HUGHES, Judge.

Petition by C. E. Walker and others against the Board of Supervisors of Simpson County for a writ of mandamus to compel the making of a school tax levy. Judgment for petitioners on demurrer to petition, and respondents appeal. Reversed and rendered.

*J. C. Jones, J. P. Edwards* and *A. N. Dent* for appellant.

The only assignment of error is that the court erred in overruling the demurrer and granting judgment for appellee wherein the board of supervisors were required to make the levy as sought by the minority petition.

We desire first to call the attention of the court to the fact that at the November, 1920, meeting of the board of supervisors the petition for the levy was rejected by the board, and from which no appeal was prosecuted by the appellee. We submit that mandamus will lie only where there is not a plain, adequate and speedy remedy in the ordinary course of law. Sec. 3231, Code 1906 (Sec. 2533, Hemingway's Code) and we submit that such remedy is provided by section 80, Code of 1906. By this section an appeal is provided from just such orders of the board of supervisors.

In the case of *Robinson* v. *Board of Supervisors of Ita-Wamba County* (see 62 So. 3) this court held that mandamus will not lie by virute of section 3231, Code 1906, to compel the board of supervisors to issue bonds for the construction of roads in a supervisor's district under the provisions of Chapter 149, Laws 1910, authorizing construction of roads, since Section 80, Code 1906, provides for an appeal from the decision of county supervisors to the circuit court. Under the above authority, the petition shows upon its face that petitioners have no right to mandamus against the board of supervisors as they had full and complete remedy by appeal.

The allegations of the petition admit that the board rejected the petition for the levy for the reasons that the petition when it was presented to it for action did not contain a majority of the qualified electors of the school district. The fact that the petition did not contain this majority was the sole cause of the action of the board in refusing to make the levy. The board understood that a petition containing a majority of the qualified electors of the school district was necessary to confer jurisdiction upon it to create and make the levy.

It was the contention of appellee that this levy was fixed or the right to make the levy made became absolute when the county school board endorsed the petition. That the signers of the petition after the petition had received their approval as directed by chapter 170, Laws 1920, had no right to withdraw their names therefrom.

We submit that chapter 170, Laws 1920, does not vest the power in the county school board to create or grant the levy, but this law only requires that the petition be endorsed by the school board as a prerequisite for its presentation to the board of supervisors, and that any signer of the petition may withdraw his signature from the petition at any time before it receives the final action of the board of supervisors, and that this withdrawal may be either by an erasure of his name from the original petition which was endorsed by the school board, or by signing petitions against such levy. In support of this contention we beg leave to cite the following authority: *Price* v. *Sims*, 77 So. 649; *Perkins* v. *Henderson*, 9 So. 897.

The financial condition existing in the school district might have been such at the time the petition was presented to the county school board in August, 1920, that the patrons of said district felt themselves able to pay the tax for the school levy, but these conditions might have materially changed before the meeting of the board of supervisors in November following. They might have seen fit to ask the board of supervisors not to make the levy as they had originally sought for reasons sufficient unto themselves. Can it be contended that these people who are to bear the burden of this tax shall be bound by the petition first signed regardless of what might afterwards develop? No third party's interest had been affected by their signature to the petition that was endorsed or approved by the county school board, and for what reason are they prohibited from withdrawing their names from this petition? Can it be contended that the legislature by chapter 170, Laws 1920, intended that the county school board should have the power to levy the tax? No, a careful reading of this chapter will disclose that the petition was to have the approval of the county school before it was presented to the supervisors.

If the contention of appellee is correct, then if the school district contains fifty qualified electors, and all this number except one should sign a petition against the levy, af-

ter a majority had signed a petition for the levy and obtained the endorsement of the county school board, this one elector could force the board of supervisors to make the levy as originally sought by the petition. It was not intended by this legislative enactment to force the people to accept something that they do not want.

We submit that the demeurrer should be sustained, and the petition dismissed.

*May & Saunders,* for appellant.

The petition for mandamus proceeds upon the theory that when the original petition was presented to the county school board, it was signed by a majority of the qualified electors of the district and was approved by the county school board and that the subsequent action of the petitioners, in withdrawing their names, did not divest the board of supervisors of the power, and did not relieve them of the mandatory duty of making the levy, it being contended that since the county school board adjudicated the sufficiency of the petition, and entered its order of approval, that the subject was thereby foreclosed and that the board of supervisors must consider the petition as of the date the county school board approved it, and not as of the date when it was presented to the board of supervisors, to whom it was addressed.

The authority and power of the board of supervisors is clearly set forth in these words: "On the petition of a majority of the qualified electors of a consolidated school district, containing not less than ten square miles, and on approval of the county school board, the board of supervisors shall, in the same manner as provided for separate school districts, annually levy taxes," etc.

It will thus be seen that two things are necessary to be done before the board of supervisors can lawfully act, viz., a majority of the qualified electors of the district must petition for the levy and this petition must be approved by the county school board; one of these things only, had

been done viz., the approval of the school board. A majority of the qualified electors petitioned against the levy. The board of supervisors was therefore bound by the action of the majority of the qualified electors in petitioning against the levy. The board of supervisors, could only act upon the conjoint action of a majority of the qualified electors and the county school board; there could be no conjoint action when the county school board approved the petition for the levy and a majority of the qualified electors disapproved the petition for the levy. The sole question therefore, for the determination of the board of supervisors was the fact as to whether or not a majority of the qualified electors were petitioning for a levy when the petition was presented to the board of supervisors for action. This was determinable by evidence and was adjudicated by the board of supervisors, and if this fact was improperly or erroneously adjudged, the remedy was by appeal and not by mandamus. Section 60, Hemingway's Code, (section 80, Code of 1906); section 2533, Hemingway's Code (section 33, Code of 1906).

In the case of *Robinson* v. *Board of Supervisors of Itwambe County,* 105 Miss. 90, 62 So. 3, this language is used: "Writ of mandamus will lie only in cases of last necessity and where the usual forms of procedure are powerless to afford relief where there is no other clear, adequate, efficient and speedy remedy."

"In the case of *McHenry* v. *State,* 91 Miss. 562, 44 So. 831, 61 L. R. A. (N. S.) 1062, it was held that mandamus was an extraordinary writ and ought not to be resorted to where the purpose sought to be accomplished can otherwise reasonably be accomplished. The trial court was correct in sustaining the demurrer and dismissing the petition."

In 18 R. C. L., paragraph 230, page 297, the rule is declared in these words: "Not only is it a general rule that mandamus cannot be used to control judicial discretion, but the view is also very generally entertained, that although the writ may be used to correct the error of courts,

when in the exercise of mere ministerial function it is not appropriate to review the action of the tribunal in any matter involving the examination of evidence and the decision of questions of law and fact, since such duty is not ministerial." Many cases are cited in the note to sustain this statement of the rule, including mostly cases from the United States supreme court." Thus the rule is the same as that declared by our statute and by our own court.

The determination by the board of supervisors of its right to exercise this power to make the levy, involved the taking of evidence or the examination of records, to ascertain whether the petition contained the requisite signatures. This was a fact which was adjudicated by the board of supervisors, and cannot be reviewed by mandamus proceeding, but it is insisted that the board of supervisors was without power to pass upon the legal sufficiency of the petition which had previously been adjudicated by the county school board. The obvious answer to this contention is, that the county school board had no power to adjudicate the sufficiency of the petition and its action therein was wholly unauthorized, *ultra vires* and void. The petition was addressed to the board of supervisors who alone could make the levy. It is true that the statute required the petition to be approved by the county school board and that the board of supervisors would have been unauthorized to make the levy without such approval, because this was one of the things required by the legislature to be done before a levy could be made and the county school board could have withdrawn its approval just as the signers withdrew their names from the petition, at any time before action upon it by the board of supervisors and the levy could not have been made. In other words, until the petition was presented to the board of supervisors the whole question was open and no final action could be taken. The signers could withdraw their names, and in either event, the board of supervisors would have been powerless to make the levy, this is made reasonably clear by the statute itself where it says: "Our court has expressly held

that signers to a petition have the right to withdraw their signatures at any time before the petition is acted upon." In the case of *Price et al.* v. *Sims et al.,* 116 Miss. 687, 77 So. 689, Judge Sykes as the organ of the court used this language: "This court has uniformly held that signers to a petition addressed to the board of supervisors, or a municipality, can take their names therefrom by signing a counter-petition." *Ballard* v. *Davis,* 31 Miss. 525; *Beeman* v. *Leake County,* 42 Miss. 237.

The course of judicial decision in this state holds boards of supervisors to the strictest limitation of their powers. *Jefferson County* v. *Grafton,* 74 Miss. 435, 21 So. 247. The powers of county boards of supervisors will be strictly limited to those conferred by statute. *Adams* v. *First National Bank,* 103 Miss. 744, 60 So. 770; *Green* v. *Snellgrave,* 103 Miss. 898, 60 So. 1023.

It will thus be seen that power can only be exercised by such tribunal in strict accord with the statute. No jurisdiction has been conferred upon the county school board to determine for the board of supervisors whether the petition is sufficient to authorize and require the board of supervisors to exercise a power conferred upon the board of supervisors.

We have also pointed out what things must be done before the board of supervisors can exercise the power conferred upon it by the statute invoked and that these two things required the conjoint action of a majority of the qualified electors of the district and the county school board. This conjoint action must appear when the petition is presented to the board of supervisors for its consideration and when this petition was presented to the board of supervisors for its consideration, there was no such conjoint action. We think this is clearly stated by Mr. Justice Ethridge in the case of *Barrett et al.* v. *Cedar Hill Consolidated School District et al.* (Miss.), 85 So. 125.

Thus we see that the only action which could have been properly taken was that evidenced by the order of the

board of supervisors, and since these appellees have not pursued their remedy by appeal to reverse the judgment of the board of supervisors, their remedy is lost. *Robinson* v. *Itwamba County,* 107 Miss. 352, 65 So. 461.

The legislature by clear, positive and unambiguous language, has clearly defined, by the statute invoked, the conditions upon which the power of the board of supervisors to make a levy may be exercised, viz. a partition signed by a majority of the qualified electors of the district, and the approval of the county school board. The board of supervisors acquired jurisdiction over the subject-matter when the petition was presented to it, and proceeded to inquire into the question as to whether or not the jurisdictional facts existed, and it found that it was without jurisdiction because one of the things required to be done had not been done. A majority petition had been converted into a minority petition before it reached the board of supervisors, and if the board had attempted to make a levy, without showing the prerequisite jurisdictional facts, such order would have been void. The intention of the legislature being clearly defined, the quotation from the opinion of Chief Justice PEYTON by Judge COOK, on behalf of the court in the case of *Ellis et al.* v. *Tillman et al.,* 88 So. 284, is peculiarly applicable, being in the following language: "No principle is more firmly established or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be intended to mean what they have plainly expressed and consequently no room is left for construction. And courts should adhere to the cardinal rule, that the judicial functions are always best discharged by an honest and earnest desire to ascertain and carry into effect, the intention of the lawmaking body."

We respectfully submit that the judgment in this case should be reversed and the suit dismissed.

*Wells, Stevens & Jones,* for appellee.

This appeal presents a very narrow question of the proper construction arising under chapter 170, Laws of 1920 which amends chapter 180, Laws of 1916.

Under the above statutory scheme, the action of the board of supervisors is annually levying the tax on the property of the school district, including the levying of said tax for the first year, was purely ministerial. There was no judicial function or duty involved in its action, it having no veto power over the return so made to it. The judicial duty devolved upon the county school board and having been performed by the county school board when said county school board approved the petition of the qualified electors of said district as being in all things in compliance with the law, the judicial duty under said statutory scheme was fully performed and there only remained the administrative and ministerial duty of carrying into effect the plain mandate of the law to-wit: the levying of the tax.

In the case at bar a majority of the qualified electors of Mount Zion Consolidated School District petitioned for the levy of a five-mill tax on all the property of the district for the purpose of paying for fuel, transportation wagons, teachers, salaries and other incidental expenses for the scholastic year of 1920-21, and to continue to make the same levy for the same purpose from year to year until changed, etc.

This case then presents to the court the concrete question whether the board of supervisors can go behind the action of the taxpayers and the county school board, and especially whether one or more of the original petitioners can sign a counter-petition and upset the whole scheme after the county school board has acted. Once the school board has judicially acted, the measure is finally approved and the board of supervisors then has no discretion in the premises but must proceed to levy the tax. The language

of the statute is that the board "shall annually levy a tax," etc.

The statute affirmatively requires the approval of the county school board. The county school board is the local tribunal having jurisdiction in each county over schools and school districts. As said by our court in *Purvis* v. *Robinson,* 110 Miss. 65, 69 So. 673: "The board of education (referring to the school board) has the power to meet at any time, on the call of its president, to conduct the business and exercise the powers entrusted to it."

Indeed, by section 4512, Code of 1906, it is provided: "The county superintendent shall be president of the school board, and shall convene it annually to define the boundaries of the school districts of the county outside of the separate school districts, or to make alterations therein and to designate the location of the school house in each district if not already located."

The superintendent of education is *ex officio* superintendent of the county school board, and together they stand at the head of the educational system of each county. They are charged with responsibility of seeing that a uniform public school system is maintained. The school board has the power to form, alter or abolish common school districts. The board has the power to consolidate two or more common school districts into what has now become a popular and more powerful district known in our statutes as a consolidated district. The purpose of the consolidation is to build, equip and maintain more adequate school facilities, and to transport pupils in a way to congregate a large attendance. One idea of consolidation is to operate the schools for a longer period of time than the old-fashioned four months' term. Our court has ruled that the county school board may convene at any time of the year in the lawful discharge of its duties. In *State* v. *Green County-Superintendent,* 111 Miss. 32, 71 So. 171, our court ruled that the county superintendent of education had a supervisory control of the entire educational system of the county and in the exercise of his best judgment and discre-

tion he would not be liable upon his bond for errors of judgment and discretion in the absence of fraud. *Alabama Case of Kimmons* v. *Jefferson County Board of Education,* 85 So. 774; *Askew* v. *Hale County,* 54 Ala. 639, 25 Amer. Rep. 730; *Mobile County* v. *Kimball & Slaughter,* 54 Ala. 56; *State ex rel. Lott* v. *Brewer,* 64 Ala. 287.

The statute construed by this court in the case of *Bourgeois* v. *Fairchild,* 81 Miss. 708, we think is so similar as to control the case at bar. There has been no case decided by our supreme court which expressly construes this new statute so as to settle the point under discussion. The question is *res novo.* Our court has ruled that upon any petition which is presented directly and for the first time to the board of supervisors for a bond issue or additional taxes, the signers have a right to take their names off at any time prior to the meeting of the board of supervisors, but their action in that regard might come too late. *Trustees of Walton School* v. *Board of Supervisors of Covington County.*

Our court did hold, in *Price* v. *Sims,* 77 So. 649, that "signers to a petition addressed to a board of supervisors or a municipality, can take their names therefrom by signing a counter-petition." We interpret this language of the court as applicable to petitions which are addressed for the first time to a board of supervisors or a municipality, petitions which do not have to be addressed to any intervening board or functionary for final approval before it is presented to the board of supervisors. The Price case presented a statute among other things providing: "Whenever a majority of the resident taxpayers of a county or of a supervisor's district, or of a school district containing not less than sixteen square miles, shall petition the board of supervisors to issue bonds," etc.

The board would then proceed. In that case the board was the one and only tribunal to pass upon the sufficiency of the petition and the proposed measure. We have various statutory schemes for the imposition of additional taxes for local purposes and for issuing bonds, both as

pertains to highways and school. There must be confidence and responsibility reposed somewhere, and that finally. There must be some finality to all proceedings of this kind. We contend that under the statute in question the conjoint action of a majority of the qualified electors and the county school board is a finality.

Another thing we stress; consolidated districts cannot function without taxes. This is made plain by the observations of our court in *Illinois Central Railroad Company* v. *Middleton,* 68 So. 146, 109 Miss. 199.

In the very recent case of *Barrett et al.* v. *Cedar Hill Consolidated School District,* 95 So. 125, our court referred to the very statute now under review, in chapter 4002, Hemingway's Code.

In 35 Cyc., p. 1007, it is said: "The power and duty of making a levy for school purposes is as a general rule in a certain designated board of officers only, and they cannot delegate this power to others.

In the footnotes, on page 1008, we find the following statements: "In Minnesota, while school taxes for independent school districts are to be extended and collected by the same county officers as county taxes, the county commissioners have nothing to do in determining the amount to be raised or approving the actions of the district in that regard." *State* v. *Lakeside Land Co.,* 71 Minn. 283, 73 N. W. 970.

The duty of a city council under Oklahoma Statute, chapter 73, article 7, paragraph 15, to approve a levy of a school tax by a school board is mandatory, and the council has no discretion to determine from any cause that the tax is too high or to reduce this levy." *Kingfisher Board of Education* v. *Kingfisher,* 5 Okla. 82, 48 Pac. 103.

Mandamus by an independent petition and not an appeal to the circuit court from the action of the board of supervisors in refusing to perform a ministerial and administrative duty was the proper procedure under facts in case at bar. Indeed so many times has this court passed

upon the question that it can now hardly be contended that it is an open question in this state.

In *Board of Supervisors* v. *Iron Company,* 114 Miss. 274, 75 So. 117, our court speaking through Judge ETH-RIDGE, said: "In a court of law mandamus will lie to compel the performance of public duty enjoined by law, and prohibition will lie to prevent the peformance of an act which the board or officer has no authority to perform."

In *Board of Supervisors of DeSoto County* v. *Dean,* 120 Miss. 324, 82 So. 257, our court speaking through the present Chief Justice, observed: "The relief here sought is the enforcement of the performance by the appellant of a ministerial and not a judicial act; consequently a writ of mandamus is the proper remedy. *Board of Supervisors* v. *Pidgeon-Thomas Iron Co.,* 117 Miss. 274, 75 So. 117; *Mc-Henry* v. *State,* 91 Miss. 562, 44 So. 831; 16 L. R. A. (N. S.) 1062. See, also, the following authorities: *Monroe County* v. *State,* 63 Miss. 135; *Leflore County* v. *State,* 70 Miss. 769; *Montgomery County* v. *State,* 71 Miss. 153.; *Chatters* v. *Coahoma Co.,* 73 Miss. 351.

We respectfully submit, therefore, that mandamus was our proper remedy and not an appeal, and that there was no discretion under the statute, lodged in the board of supervisors, or judicial function to perform, but that the appellants having wrongfully refused to perform a ministerial and administrative function which performance the law specially enjoins as a duty resulting from the office held by such members of said board of supervisors, and there being no plain adequate and speedy remedy in the ordinary course of law, therefore, the demurrer was rightfully sustained in the court below and the judgment of the lower court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

C. E. Walker and others filed a petition for mandamus against the board of supervisors of Simpson county

to compel the board to make a levy of five mills for the Mt. Zion consolidated school district, alleging that proceeding under chapter 170, Laws of 1920, a petition was presented to the board of supervisors by a majority of the qualified electors of said consolidated school district, which petition was approved by the county school board, and prayed the board of supervisors to make a five-mill levy in accordance with chapter, 170, Laws of 1920; that the county school board adjudged the petition to contain a majority of the qualified electors and the petition was then submitted to the board of supervisors, who thereupon began an investigation as to whether or not the petition so presented and approved by the school board contained a majority of the qualified electors of the said school district when presented to the board of supervisors; and that the board of supervisors found that a majority of the qualified electors had signed a counter-petition against the levy and declined thereupon to levy the said taxes as prayed. No appeal was taken from the order of the board declining to levy the taxes, but thereafter a petition for mandamus was filed. The petition was demurred to, first, that the petition is insufficient in law, in that it does not state a cause of action; second, that defendants had a right under the law to act upon the petition directed to them with reference to making the levy and were not bound by the petition and order of the county school board with reference thereto. The demurrer was overruled and the board declined to plead further, and judgment was rendered directing the writ of mandamus to issue, from which judgment this appeal is prosecuted.

The contention of the board of supervisors, the appellant, is that it had the right to determine whether the petition for the tax levy contained a majority of the electors of the district, and that the petitioners on the original petition had a right to get off said petition any time before the levy was made, and that the board was not bound by the *status* of the petition at the time it was approved by the county school board.

The appellees contended that the county school board had a right to adjudicate the sufficiency of the petition and whether it contained a majority of the electors at the time of its approval by the county school board, that thereafter no change could be made, and that the board of supervisors had no discretion in the matter or power to review the action of the county school board.

Chapter 170, Laws of 1920, provides that, on the petition of the majority of the qualified electors of any qualified school district containing not less than two square miles and the approval of the county school board, the board of supervisors shall make the levy prayed for, etc.

The question for decision is whether the petition can be changed by signers thereon withdrawing therefrom after its presentation and approval by the school board and prior to action on the petition by the board of supervisors.

In the case of *Price* v. *Sims,* 116 Miss. 687, 77 So. 649, this court held that signers to a petition addressed to the board of supervisors or a municipality can take their names therefrom by signing a counter-petition.

The language in the present statute, "on the approval of the county school board," does not confer upon the county school board final jurisdiction to decide whether the petition contains a majority of the qualified electors of the district. It may be that the county school board ought not to act on the petition unless and until it contains a majority of the qualified electors, but their decision upon that question is not final. The principal purpose, if not the sole purpose, of the requirement for the approval of the county school board is to confer upon the county school board the power to pass upon the wisdom and necessity for the school levy. In many instances a consolidated school district would not be able to raise sufficient funds to conduct the school in accordance with law on that subject, and in some cases the amount of tax petitioned for might be wholly insufficient to run the school for the period of time required, but it was not the purpose of the law to give a school board the jurisdiction to pass on the suffi-

39

ciency of the petition as to signatures so as to bind the board of supervisors.

The petition is addressed to the board of supervisors, and the board has the power to determine the question of its own jurisdiction and the petitioners may withdraw at any time before the board of supervisors acts thereon. Circumstances may arise which would make it highly proper and perhaps absolutely necessary to prevent the levying of taxes after the school board had approved the petition. Floods, fires, or storms or other causes might so change the condition of a district as to make it of the utmost importance to the people to have this power. The attorney-general has held in accordance with these views. See Opinions of Attorney-General, 1911-1913, p. 75; same, 1917-1918, pp. 39, 40. We think this interpretation of the law by the administrative departments of the government is correct, and that the court below was in error. Wherefore the judgment will be reversed, and judgment entered here for appellant.

*Reversed, and judgment here.*