<hr />

HATTEN ET AL *v.* BOND ET AL.

[73 South. 612, Division A.]

1. COUNTIES. *Creation. Procedure. Registration of voters.*

Under Acts 1916, chapter 527, section 15, providing, that the registration books of the county of Harrison shall be the registration books for the purpose of the election to be held in the territory embraced in the county of Stone and that the polling places now established in the county of Harrison and embraced in Stone county shall be the voting places for the purpose of holding the election under section 3 of the act. This act was sufficient authority for the purpose of holding the election and the fact that section 15 of the act provides that qualified electors shall be registered ten days before said election, and that the commissioners, if they see proper, may establish other voting precincts,

and shall divide the territory into convenient voting precincts, which was not done, does not invalidate the election, as it was discretionary with the commissioners as to the establishing new precincts and to register a person ten days before the election would not qualify him to vote.

2. COUNTIES. *Creation. Procedure. Submission to popular vote.*
   Under section 260 of the Constitution so providing, no new county can be formed unless a majority of the qualified electors voting, in each part of the county or counties proposed to be dismembered, and embraced in the new county shall separately vote therefor.

3. STATUTE. *Partial invalidity.*
   If section 16 of the Laws 1916, chapter 527, providing that indictments pending in Harrison county should be tried there instead of in Stone county when elected, was violative of constitution of 1890, section 26, as denying a public trial by a jury of the county where the offense was committed, this would not invalidate the whole act providing for the creation of Stone county.

4. SAME.
   Nor does the fact that section 14 of the act require Stone county to execute and complete contracts entered into by Harrison county so far as they affect the territory of Stone county invalidate the entire act.

APPEAL from the chancery court of Harrison County. HON. W. M. DENNY, Chancellor.

Bill by P. L. Hatten and another against A. W. Bond and others. From an order sustaining a demurrer to the bill complainants appeal.

The facts are fully stated in the opinion of the court.

*Mixe & Mixe,* for appellant.

The act creating Stone county is a special statute, and the rule, as we understand, is that all the requirements of a special statute have to be complied with or there can be no legal effect to anything done or created under it. What does this special statute provide? Section 3 provides that, upon the approval of the act by the govenor, within ten days after the 22nd day of March, 1916, the governor should appoint three commissioners from the territory proposed to be taken from Harrison county who should be residents of said

territory, and that said commissioners should provide and hold an election as thereinafter provided. This section specially provides that there should be three commissioners appointed to hold an election to determine the creation of Stone county and that these commissioners should hold said election as thereinafter provided in said act. One of the sections "thereinafter providing" the requirements of said election is section 15 of said act, pp. 15, 16, which precisely provides that the commissioners appointed under section 3 of said act shall do two things: first, "shall divide into convenient voting precincts the territory embraced in Stone county," and, second, "shall also provide for the registration of the qualified electors in said territory at least ten days before said election." The bill of complaint alleges that the commissoners appointed under said section 3 failed to do either one of these things, and we say that it is essential to a valid election that they should have complied with said provisions. 26 American & English Enc. of Law, p. 665.

The act creating Stone county is a special statute delegating powers to the three commissioners to be appointed by the governor, and every power delegated to them would have to be exercised and complied with and in the manner designated by the statute before any act of theirs under such statute would be valid. *Garrigus et al* v. *Board of Commissioners of Parke County*, 39 Ind. 67.

The letter of the act creating Stone county was that the commissioners, before election, should divide the territory into convenient voting precincts and provide for registration of the qualified electors of said territory at least ten days before the election, and these things were not done. *Dickson* v. *Hill*, 75 Ga. 369; *Marsales* v. *Garrison*, 27 S. W. 929; *Dudley* v. *Mayhew* (N. Y. Appeals), Comstock, 9; *State* v. *Coleman, Sec'y State,* 13 N. J. Rep. 98.

In the instant case, if the true meaning of a majority of the qualified electors of the territory embraced in Stone county has been found, by majority of seventy-nine votes, that they desired the creation of Stone county, yet it has not been reached in the manner required by law, on account of the failure of the commissioners to divide the said territory into convenient voting precincts and to provide for the registration of the qualified voters in said territory at least ten days before the election.

We submit that, under the foregoing authorities, each and every step set out in the act creating Stone county should have been, by the commissioners, taken in the manner directed by said act. It has always been our understanding, from law-student days, that a special act authorizing anything to be done or created under said act must be specifically followed and every step specified must be taken and in the manner prescribed or the thing done or created is null.

Our next complaint is that the act creating Stone county violates section 260 of the constitution of Mississippi. We have been unable, after diligent search of the provisions of constitutions somewhat similar of sister states to find any construction of a provision like this one with reference to the point urged. The governor, when he signed this act, had before him the opinion of the attorney-general of Mississippi that the act was unconstitutional because it violated this section, and we herewith append as exhibit "A" to this brief a copy of said letter. So we submit that our construction of this provision is the correct one.

Appellants contend further that the act creating Stone county is null and void because of the following provision in section 14 of said act, to-wit: "That all contracts heretofore entered into by the county of Harrisson, as far as the same affects the said Stone county shall be executed and completed by Stone county.

This violates section 16 of the Constitution of the state of Mississippi and article, 1, subdivision 10, of the Constitution of the United States, in that it impairs the obligation of contract. *Gunn* v. *Barry,* 15 Wallace, 610; *White* v. *Hart,* 13 Wall. 646.

Appellants contend that said act creating Stone county is further unconstitutional because section 16 of said act violates section 26 of the Constitution of Mississippi, in that it prohibits a man charged with crime from being tried in the county where the crime was committed, as said section 16 of said act provides that all criminal cases pending at the time of its passages in the circuit court of Harrison county should be tried in Harrison county. A man has the right to be tried in the county where the crime was committed, and therefore a person charged with crime committed in the territory embraced in Stone county should be tried in Stone county, and this is prevented by said section 16 of said act.

We submit that the court erred in not granting the injunction prayed for by appellants and in dismissing their bill of complaint, and that this court should reverse this cause therefor.

*U. B. Parker* and *W. G. Evans,* for appellee.

Coming to the first question raised in the bill of complaint, appellants contend that the law creating Stone county violates section 260 of the Constitution of the state of Mississippi, in that each dismembered part of Harrison county was not allowed to vote in the election to determine whether or not Stone county should be created.

Section 260 of the Constitution of the state of Mississippi reads as follows: "No new county shall be formed unless a majority of the qualified electors voting in each part of the county or counties proposed to be dismembered and embraced in the new county,

shall separately vote therefor; nor shall the boundary of any judicial district in a county be changed, unless, at an election held for that purpose, two-thirds of those voting assent thereto. The elections provided for in this and the section next preceeding shall not be held in any county oftener than once in four years. No new county shall contain less than four hundred square miles; nor shall any existing county be reduced below that size."

It does look to the pleader that the conclusion attempted to be drawn by appellants as to the provisions of this section are absurd. *Conner* v. *Gray*, 88 Miss. 489.

The next question raised in the bill of complaint is that the law is unconstitutional because section 16 of said act violates section 26 of the Constitution of the state of Mississippi in that it prohibits one charged with crime from being tried in the county in which the crime was committed. Section 16 of the law provides that all indictments found prior to the passage of the act and crimes committed in the territory taken from Harrison county shall remain to be disposed of in Harrison county.

Appellants do not especially press this contention as will be seen from their brief, and we are of the opinion that in order for them to have pressed this issue it would necessitate their trying to handle the county lines like marking off section 260 of the Constitution which suits them. All indictments found in Harrison county prior to the passage of the act were certainly found in the county where the crimes were committed, and had it not been for this action no one can certainly contend that the case would not have been tried in the county where the indictment was found and the crime committed. Again, the general statute provides for the removal of causes to the proper jurisdictions.

Last but not least, as it was said in the case of *Conner* v. *Gray, supra,* no persons affected are making complaints, and certainly. the appellants here cannot be interested in the affairs of others.

Next, appellants complain that section 14 of said act providing for the disposition of contracts is violative of section 16 of the Constitution of the state of Mississippi and of the Constitution of the United States. In the original bill of complaint no mention was made. of the contract had with Proffessor Huff, but the amended .bill of complaint complains at great length that Professor Huff had a contract with Harrison county to teach the Agricultural High School, which had been by the creation of Stone County left therein.

Professor Huff is not a party to this litigation, and the court will of course not hear him nor hear complainants in his behalf.

Next, we come to section 15 of the law providing that the registration books of the county of Harrison shall be the registration books for the purpose of the election to be held in the territory to be embraced in the county of Stone and also provides for the.registration of qualified electors in said territory at least ten days before said election. The court will notice that section 15 continues to read: ''The polling places now established in the county of Harrison and embraced in Stone county shall be the same voting places for the purpose of holding the election under section 3 of this act but said Commissioners, if they see proper, may establish other voting precincts.''

First, the bill of complaints says and contends under this law the election commissioners must register the voters ten days before the time of holding the election. We contend that the word ''registration'' in that section was typographical error and placed therein by inadvertence as the legislature of the state of Mississippi did not intend that a man who registered only ten days before an election could vote in the coming election in

violation of the Constitution of the state of Mississippi
and the general statutes, both of which provide that
no person shall be allowed to vote in any election unless
he shall be legally registered for four months prior to the
time he offers to vote. Was it intended by this law that
the election commissioners should appear at the court-
house and permit all qualified electors who had registered
to change their registration, if necessary. It would seem to
a reasonable man that this was the intention of the
legislature, and no complaint is made by appellants in
this case that this was not done.

The next question discussed by the appellant deals
with the allegations of the bill of complaint wherein it is
alleged that election commissioners failed to divide the
territory to be embraced in Stone county into convenient
precincts. Now the law provides that the voting places
now in Harrison county and embraced in Stone county
shall be the voting places for the purpose of holding
this election. The election commissioners were appoint-
ted by the governor and proceeded to hold the election
and reported to the secretary of state their action and
the result thereof. No living man, not even complainant
in this bill of complaint, has complained that a single
qualified elector was denied the right to vote, and not
one line in the bill of complaint says that justice was
not done. Not one word says that a correct result was
not had, but now the appellants file their bill of com-
plaint in the court below attacking the constitutionality
of the law which has been passed upon by our courts
letter for letter on each phase of the question. Again
I say that the bill contains no allegation of fraud or
any allegation in the world that the correct result had
not been reached and that any act on the part of the com-
missioners would have changed the result of the election
but still they say the commissioners did not divide the
territory embraced in Stone county into convenient
voting places. Appellants very ingeniously attempt
to ingender into the litigation a matter which would

bring about a question of fact not because anybody has
been deprived of his right to vote, for according to the
bill of complaint they were not, because any other re-
sult would be reached, for they do not allege it.

So we say that since all the constitutional questions
raised here have been passed upon in the case of *Con-
ner* v. *Gray* and since the court has held in the native
*Lumber case* and the *McHenry case, supra,* that the
courts will not disturb and interfere or inquire into
acts of these election commissioners, it seems to us
that the litigation here instituted and now continued
can only have one effect, and that is to diminish the
credit of and hinder the successful operation of the county
government which has been created by a fair and square
election, in which a majority of the sovereign votes were
cast, and in which these two complainants have been
allowed to signify their dissent, has carried in favor of
the establishment and operation of the county.

In the case of *Hinton* v. *Perry County*, 84 Miss. 536,
very conveniently overlooked by appellants, a bill of
complaint was filed alleging that practically everything
necessary to be done by the board of supervisors before
the holding of the election had not been done, and in
addition thereto they alleged that instead of the voters
being in favor of the removal of the county seat there
were two hundred majority against it, the supreme
court held that the board supervisors must do certain
things in holding the election, but they, by their minutes,
had said that that was done and that all necessary to be
done had been done and that the election had carried,
and the supreme court not only dismissed the bill of
complaint carrying with it a bond for injunction but
spanked the complaint with a liberal attorney's fee.

With absolute confidence in what the result will be,
we submit the case. The first cause of demurrer to the
amended bill of complaint, is as follows: ''Because there
is no equity on the face of the amended bill of com-
plaint.'' We submit that even this cause of demurrer

covers every allegation in the amended bill of complaint and would warrant the court in sustaining and affirming the decree in the court below.

We call the court's attention to the other causes of demurrer contained in the record from page 46 to 51 inclusive, and submit to this court that all of said causes of demurrer are well taken and together with the first cause above set out completely dispose of every allegation in the bill of complaint.

We can see no material difference between this cause and the case of *Conner et al.* v. *Grey et al.,* 88 Miss. 489.

It is always a delicate judicial duty to declare an act of the legislature unconstitutional, and in doubtful cases, it should be avoided. *Campbell* v. *Union Bank,* 6 How. p. 625; *Newson* v. *Cocke,* 44 Miss. 352. The statute should be sustained if possible, but the contitution must be preserved inviolate. *Thomas* v. *Grand Gulf R. R. & Banking Co.,* 3 How. 240. Where the meaning of a clause in the constitution is doubtful a statute alleged to be in violation of it, will be held valid. *Newson* v. *Cocke,* 44 Miss. 352.

It is a cardinal rule for the construction of the constitution and of statutes, that the intention of the legislature or convention is to be deduced from the whole, and every part of the statute or constitution taken together, the words and the context and such construction adopted as will best affectuate the intention of the law maker. *Green* v. *Waller,* 3 Geroge, 650.

He who insists on the unconstitutionality of a law upon the ground, that it impairs a right of his must show he had a right impaired by the law. *Dejarnett* v. *Haynes,* I. C. 600.

We submit that the complainants, the appellants in this court have not shown any right of theirs, which has been impaired by the law. We submit that the decree of the chancellor in this case sustaining the demurrer to the amended bill and dismissing said cause, should be affirmed by this honorable court.

HOLDEN, J., delivered the opinion of the court.

By chapter 527, Acts of the legislature of 1916, approved January 6, 1916, the legislature authorized the creation of Stone county, composed of territory taken entirely from Harrison county. Following this act, the Governor appointed three commissioners, who held an election in the territory of the new county on the question of the creation thereof. A majority of the qualified electors in the territory embraced within the proposed county voted for its creation. The result of the election was duly certified to the secretary of state, and the Governor issued his proclamation, declaring the said county of Stone created. Following this, the Governor appointed the county officers, who assume their respective duties. The county was duly organized, and had been exercising its powers and functions as a county for about a month, when the appellants, P. L. Hatten and R. W. Davis, resident taxpayers, filed their bill in the chancery court of Harrison county against A. W. Bond, supervisor, and other officers of the county of Stone, seeking to enjoin these officers from issuing a loan warrant of five thousand dollars; from issuing bonds or incurring any expense in maintaining and operating said county government; and praying that the act of the legislature, authorizing the creation of the new county, be declared null and void, and that the election, creation, and organization of said county of Stone be declared null and void, as being illegal and unconstitutional. The defendants in the court below demurred to the complainants' bill, which demurrer was sustained by the chancellor, and the complainants below appeal here.

The contentions of the appellants, according to the allegations of their bill, are as follows:

First. That said county of Stone was not legally created, because the three commissioners appointed to hold the election failed to divide into convenient voting precincts the territory embraced in the proposed

county of Stone, and failed to provide for the registration of electors in said territory ten days before said election, as required by said act.

Second. Because the act creating Stone county violates section 260 of the state Constitution, in that it authorizes the creation of said new county upon a majority vote of the qualified electors of the territory embraced in the proposed new county; that the legislature could only authorize the creation of the new county by a majority vote of the qualified electors of the territory embraced in the proposed county and a majority vote of the qualified electors voting separately therefor in the remaining territory of the old county of Harrison.

Third. Because the act creating Stone county violates section 26 of the state Constitution, in that it prohibits one charged with crime from being tried in the county in which the crime was committed.

Fourth. That the act is unconstitutional because section 14 of said act impairs the obligation of contracts.

If we concede, for the purposes of the discussion, that appellants are such parties as may maintain a bill of injunction in a case of this character, and further concede, for the same purpose, that appellants are not estopped because of their failure to act until about one month after the county was organized still we think the decree of the chancellor in sustaining the demurrer to the appellants' bill was eminently correct. We will discuss the different contentions of the appellants in the order in which they appear above.

As to the first contention of appellants in reference to section 15 of the act: By reading the act it will be observed that provision is made therein "that the registration books of the county of Harrison shall be the registration books for the purposes of the election to be held in the territory embraced in the county of Stone, . . . and the polling places now established in the county of Harrison and embraced in Stone county

shall be the voting places for the purpose of holding the election under section 3 of this act.

We think that this is sufficient authority for the purposes of holding the election; and the fact that said section 15 provides that qualified electors shall be registered ten days before said election, and that the commissioners, if they see proper, may establish other voting precincts and shall divide the territory into convenient voting precincts, which was not done, does not invalidate the election, as it was discretionary with the commissioners as to establishing new precincts and to register a person ten days before election would not qualify him to vote, and would be a useless proceeding. The appellants make no complaint in their bill that any fraud was perpetrated, or that any qualified elector was denied the right to vote, or that the election was not in all respects fair and regular. Furthermore, the election appears to have been held regularly, the returns thereof certified to the secretary of state, and the Governor proclaimed the county created.

As to the second contention of appellants: The language of section 260 of the state Constitution is plain, and means exactly what it says; that is, that:

"No new county shall be formed unless a majority of the qualified electors voting in each part of the county or counties proposed to be dismembered and embraced in the new county, shall separately vote therefor."

In this case, Stone county was carved wholly out of Harrison county, and the question of the creation of the county could properly be determined only by a majority of the qualified electors voting in that part of the county proposed to be dismembered and embraced in the new county. Certainly it does not mean, as contended by counsel for appellants, that this question of creating the new county should have been voted on by the qualified electors in the territory of the proposed new county and also by the qualified electors in the territory of the old, or remaining, county of Harrison.

Such a construction would be erroneous and violent, indeed. *Conner* v. *Gray,* 88 Miss. 489, 41 So. 186, 9 Ann. Cas. 120.

As to the third contention of appellants, regarding section 26 of the Constitution, providing that the accused shall have a public trial by a jury of the county where the offense was committed: We fail to see what interest appellants could have in the constitutionality of this part of the act. It seems that such a question might be raised by one who was charged with crime committed in the Stone county territory, and whose case was pending in Harrison county at the time of the creation of the county of Stone; but at all events, if this particular provision were unconstitutional and void, it could be lifted out of the act, and the other parts and sections could stand without it as a valid act, authorizing the creation of Stone county.

Referring to the fourth contention of appellants, in which it is claimed that the act authorizing the creation of Stone county is unconstitutional, in that it impairs the obligation of contracts, it seems that the only basis for this contention is that Mr. J. A. Huff had a contract with Harrison county to teach the Agricultural High School for three years, and that the high school is now in the new county of Stone. We cannot see what substantial interest appellants could possibly have in the contract entered into between Mr. Huff and Harrison county. They could be affected only remotely, if at all. The act authorizing the creation of Stone county provides that Stone county shall take care of certain contracts entered into by Harrison county. But if the contention of the appellants were true, in reference to the impairment of this particular contract, still that part of the act could be declared void and the remainder of the acts creating the county held valid and constitutional, and in no view can the appellants successfully claim that this particular part of the act invalidates the whole.

Therefore, summing up all the contentions urged here by the appellants, upon which they rely in their endeavor to have a court of equity declare the creation of Stone county null and void, and, in effect, to dissolve it, with the confusion, injury, and damage necessarily resulting therefrom, we do not think there is sufficient merit in their position to justify the relief sought. Stone county was legally and constitutionally created by the legislature and a majority vote of the qualified electors embraced in its territory, and it must remain so for all time to come, unless changed or abolished by the citizenship thereof, according to the law of the land. The decree of the lower court is affirmed.

*Affirmed.*