EDWARDS ET AL. *v.* BOARD OF SUP'RS OF BOLIVAR COUNTY.

[87 South. 8. No. 21541.]

SCHOOLS AND SCHOOL DISTRICTS. *Bond election void if held at place not designated by statute.*

Under chapter 194, Laws of 1916 (Hemingway's Code, section 4004), an election to determine the issuance of bonds to erect a schoolhouse in a consolidated school district is void if held at a place not designated by the statute, notwithstanding all electors had due notice.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Suit by L. E. Edwards and others against the Board of Supervisors of Bolivar County for an injunction. From a decree dissolving the injunction and dismissing the bill, compainants appeal. Reversed and rendered.

*Roberts & Hallam,* for appellants.

The Mississippi legislature thought the matter of the place of holding election in consolidated school districts of sufficient importance to require the enactment of an independent and special law governing the mater, and in the exercise of its wisdom and unquestioned rights in the year 1914 it enacted a law, the first section of which reads in part as follows:

"Be it enacted by the legislature of the state of Mississippi that in any case where it becomes necessary to hold an election affecting any question to be submitted to the qualified electors in any consolidated school district in this state as now provided by the laws of the state forming such consolidated school district, that such election shall be held at the schoolhouse of such district." Chapter 184, Laws 1914.

The language of this act is simple, plain and unambiguous. It means what it says: "Perceiving that instances might arise in which elections could not be held in a consolidated school district because of the absence therein of a schoolhouse, and considering the matter of sufficient importance, the legislature further considered the matter with reference to the place of holding elections in such districts, and in 1916, amended the former act so as to make it read as follows:

" 'That in any case where it becomes necessary to hold an election affecting any question to be submitted to the qualified electors in any consolidated school district in this state, as now provided by the laws of the state forming such consolidated school districts, that such election shall be held at the schoolhouse of said district, or if there is no such house, the election shall be held at a convenient place designated by the trustees of the school.' " Chapter 194, Laws 1916, Hem. Code, sec. 4004.

The legislature thus again acted in no uncertain manner. It made the place of holding an election in such a district, and the mode and medium of designating such a place, jurisdictional, as it were, vital, the *sine qua non* to the validity of any election held in such district. And in *Barrett* v. *Cedar Hill*, 85 So. 125, this court has so held. *Harris* v. *State*, 72 Miss. 960, 18 So. 387, 33 L. R. A. 85; *Johnson* v. *Futch*, 57 Miss. 73; *Lewis* v. *Bank*, 64 Miss. 727, 2 So. 243; *Bolivar County* v. *Coleman*, 71 Miss. 832, 15 So. 107; *Kibbe* v. *Benson*, 17 Wall. 624; *Kibbe* v. *Benson*, 17 Wall. 624, 21 L. Ed. 741.

This decision settles the case at bar. No other authority is necessary to entitle the appellants to a reversal of the decree of the lower court and to a final decree here in their favor. The statute in the case at bar was as flagrantly violated as it was in the Barrett case. The election was not held at the proper or right place. There were two schoolhouses in the district, one at Gunnison the place fixed by the school board as the site of the schoolhouse, and one at Deeson. The election was held in neither. And if we should concede for the argument that these schoolhouses are not the schoolhouses contemplated by the statute, but that the legislature in passing the statute had in mind a schoolhouse adopted or used as the consolidated schoolhouse, yet, in case there is no such schoolhouse in the district, the statute provides that, the election shall be held at a convenient place designated by the trustees of the school," and as the trustees designated no place,

and as in fact, no place was ever designated by anybody, the order of the board of supervisors and the notice of election given by the election commissioners, neither of whom had authority to designate a place, merely reciting that the election would be held "in the towns of Gunnison, Deeson and Round Lake," The election was not held, "at the right place" as commanded by the statute. The statute commands that the election shall be held at "a convenient place," and not at three places as was done in the instant case. And the evidence shows that the election was held, not at a public place, but in the case of Gunnison, "in the drug store of E. H. Key" "private place where this court says, an elector might be disinclined to go at all, or might be intimated or overreached if he did go." It has been intimated that as the trustees of the school had not fixed the place at which the election should be held, the board of supervisors of the election commissioners had the right to fix it and did so. They had the right if the statute is to be disregarded; otherwise not. But it is a misconception to say that the board of the commissioners ever fixed a place; they did no such thing. To say that the election would be held, "in the towns of Gunnison, Deeson and Round Lake" does not fix a place such as the statute contemplates, a place other than a schoolhouse. The statute provides that the place should be fixed "by the trustees of the school" and, therefore, necessarily means that it should be fixed by no other agency. It provides that the election shall be held at the place so designated by the trustees, and necessarily means that it shall be held at no other place. In general elections the time and place is usually fixed by law and the electors are charged with notice thereof, but in special elections as a rule neither the time, nor the place is fixed; but the fixing of the time and the designation of the place are left to some authority named in the statute. This is true of the election in the case at bar. And in such cases it is the rule that no other agency has the power to control these matters. Thus, is it said:

"In Special Elections:—When the time and place of holding the election are not fixed by law, but the election is only to be called and the time and place to be fixed by some authority named in the Statute, after happening of some condition precedent, it is essential to the validity of such an election that it be called, and the time and place of holding it be fixed by the very agency designated by law, and by none other." 15 Cyc. 322, and note 59. "So also the place of holding an election must either be fixed by law or appointed by legally authorized officials; and votes cast at a different place will avail nothing. 15 Cyc. 343, citing numerous authorities.

*Sillers, Elmore, Clark & Sillers,* for appellee.

Appellants rely on the case of *Barrett et al.* v. *Cedar Hill Consolidated School District,* 85 So. 125, as their best and most apt authority. In our judgment, that case went to the extreme limit in insisting on the designated place for holding an election as an absolute essential to the validity of the election, without regard to the character of the change of place and without any regard whatever to whether any harm resulted from the change of place.

We do know that there is at least one kind of a change of place which will not void and nullify an election. Change of place was the subject of complaint in *Steele* v. *Calhoun,* 61 Miss. 556. Appellants say there was no change of place in that case, because the election was held in the Dogwood Flat Church Building, though the building had been moved a half mile away; that according to the law of physics there may have been, indeed there was, a change of place, but under the law of elections it is a misconception of the facts, to assert that there was a change of place.

The briefs of the attorneys in that case who were contending for the validity of the election indicate that they did not rely on such a distinction. Their argument was

that the change was of a character which worked no injury. We think the true rationale of that decision is this: There was undoubtedly some sort of a change of place in that case, but it was such a change as worked no sort of injury, or rather, to follow the opinion closely, it was not shown. "It does not appear, that any injury resulted." In other words, that kind of change of place which in reality does not appear to have affected the election should not in law void and nullify the election.

The Cedar Hill consolidated school case was argued and decided on the issue of the effect of a change of place. In the Cedar Hill consolidated school case, the place of election was designated. Such is not the issue in the present case.

It seems clear, under the circumstances in this case, the statute in and of itself, designated no schoohouse in the Gunnison consolidated school district as the polling place, and that if the election commissioners had given notice that the election would be held at the school-district house of the Gunnison consolidated school district, infinite confusion would have resulted.

There being no schoolhouse, it was the duty of the trustees to designate a convenient place. But the great fact is that the trustees did not designate a place of any kind.

The case, therefore, reduces itself to this: Not whether an election can be held at a place other than the properly designated place to which question so many of the authorities referred to in appellant's brief apply, but the question is whether a valid election can be held where the authority on whom, in case the duty of designating a place fails to make the designation.

For instance, section 6746 of Hemingway's Code requires the board of Supervisors to lay off election precincts and to designate the voting place in each election district or precinct. In the event of their failure to fix the polling place, do attorneys for appellants mean to say that no election can be held at all? If no voting places had been

established or fixed by the board of supervisors of Humphreys county after that county was organized and after the lawsuits attending upon its labor pains had ended and if the election commissioner, at the last general election, notwithstanding, went forward and conducted the election in that county at places designated by them, and there was no complaint that anybody did not have notice of the places at which the election would be held, nor that anybody was prevented from voting because of the failure, will it be said that such an election was no election at all? And that in truth that the board of supervisors could perpetuate themselves and other county officers in office by merely neglecting to fix or designate a place to vote in the precincts?

Mandamus would afford no relief. In the present case one trustee might have thought Deeson a convenient place, another, Round Lake, and another Gunnison, and it being a matter of judgment and discretion, the court could not have forced their judgment and discretion. Where a consolidated school district is without a schoolhouse, let the people of the district, say appellants do the best they can without school elections, if the trustees are opposed to having any, and therefore refuse or neglect to designate a place for them.

In the present case, the territory over which the election was held consisted of three regular election precincts. It must be presumed that polling places had been regularly and duly established in these precincts. The regular commissioners of election were authorized to hold the election. They returned that the election had been properly held. It is fair to contend that the election, was therefore, held at the regular polling places where elections in those three precincts, are usually and customarily held. There is nothing to the contrary, nothing. There is no complaint that anybody was prevented from voting, or inconvenienced in voting, not a complaint. As was said in *Collins* v. *Jackson,* 119 Miss. 729, there are "no allega-

tions that the result of the election was not a full and fair expression of the wishes of the people of this territory." Under such circumstances, no doubtful case should cause the court to pronounce the election void.

In *Collins* v. *Jackson, supra,* the facts surrounding that case are set forth in the dissenting opinion by Judge ETHRIDGE, and it is shown, 119 Miss. 758, that the election was not held at the precincts existing by law in the several counties; that is, the parts of the counties embraced in the proposed new county. In that part of the county of Washington embraced in the proposed new county there were election districts and voting precincts in Silver City, Louise, Midnight, and Lake City. The only place where an election was held was Silver City."

It is also shown on page 759, that "as to the election and notice of election held in Sunflower and Sharkey Counties, that there was no election precinct in the parts proposed to be incorporated in the new county, and that the act did not provide for any place for the holding of elections in such territory, nor did it confer upon the commissioners to hold the election upon the proposition of creating the new county power to create such election districts."

The statement is also made on page 760, that "as the act in question did not clothe the commissioners appointed by the Governor with power to create precincts, they could not change the place for holding elections as fixed by law, and their act undertaking to do so is void."

From the above excerpts it is seen that elections were not held in all of the precincts included at all, but in only a few of them. And that there were no election precincts in the parts of Sunflower and Sharkey counties proposed to be incorporated in the new county, that the act designated no place for holding elections therein, nor did it confer any authority to designate such place for the holding of such special election. And that the commissioners had no power to create precincts, nor to change the places of voting, and yet the commissioners did so.

The opinion in chief in that case referred to, characterized and held these slips and missteps as "these irregularities" and declared, in accordance with sound sense and good judgment, that those irregularities would not vitiate the election. This for the good reason that it was not shown that they caused any voter to lose his vote, or even inconvenienced any voter, and because there was not even an allegation, as there is none here, that the result of the election was not a full and fair expression of the wishes of the people in this territory." The court upheld that election. How much more should this election be upheld because there was in the present case, under its peculiar circumstances, no schoolhouse designated by statute, and the trustees failed to designate a convenient place; the election was held in the usual and customary way; the voters were afforded three times as much convenience as they would have been afforded had the trustees designated only one place; and there is no charge whatever in the pleading that any single voter was prejudiced in the least in his right to vote.

We have not collected in this brief the cases from other states sustaining our contention. It is admitted in the opposing brief that there are such cases which do not place on "place" the supreme importance sought to be fixed on it by appellants. Many of these cases will be found in the briefs for appellee in the case of *Barrett* v. *Cedar Hill Consolidated School District* above referred to. *Kerlin* v. *City of Devils Lake et al.,* 25 N. D. 207, 141 N. W. 756. And that case presents the reasoning in favor of our contention as well, if not better, than any of the others. The opinion is well reasoned, and we invite the court's attention to same.

At the same time keeping in mind that the case now under consideration is not one involving a change from a designated place, for there was no designated place; we do not have to go outside of our own reports to find authority for our position. The case of *Collins* v. *Jackson,*

119 Miss. 227, read in the light of the facts set forth in
Judge ETHRIDGE's opinion warrants the affirmance of the
chancellor's decree.   That case is also in keeping with,
and consistent with, the general trend of our jurispru-
dence on such questions and is exactly what was to be
expected from the announcements of the Mississippi courts
heretofore made on the subject of departures from the
rules about holding elections.

The previous announcements of this court were what
the lower courts had in mind when the lower courts up-
held the elections drawn in controversy in the case of
*Collins* v. *Jackson,* 119 Miss. 727, and *Barrett* v. *Cedar
Hill Consolidated School District,* 85 So. 125, and in the
present case.   It is respectfully submitted and urged that
the decree of the lower court in this case is justified by the
opinions of our supreme court, and we respectfully ask
that the same be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a decree dissolving an injunc-
tion and dismissing the bill of the appellants, who, as
taxpayers, sought to restrain the board of supervisors from
issuing forty thousand dollars in bonds for the erection
of a schoolhouse in a consolidated school district.

Upon the presentation of a petition by the patrons to
the school board of Bolivar county asking that the Gun-
nison and Deeson school districts be consolidated into
one district to be known as the Gunnison consolidated
school district, and that the schoolhouse of said district
be located at Gunnison, the schoolboard entered an order
establishing the Gunnison consolidated school district and
appointing trustees therefor.

Following the establishment of the district, the board
of supervisors was petitioned to issue forty thousand
dollars in bonds with which to erect a new school build-
ing for the district.   Thereupon the board entered its order

declaring its purpose to issue said bonds, and directed the clerk to give due notice thereof by publication. Following this, twenty per centum of the taxpayers of the district petitioned against the isuance of the bonds, whereupon the board of supervisors, in compliance with chapter 209, Laws of 1918, section 2, directed that an election be held in said district to determine whether the bonds should be issued. The order of the board directed that the election should be held "in the towns of Gunnison, Deeson, and Round Lake on May 30, 1919." The election commissioners also gave notice that the election would be held "in the towns of Gunnison, Deeson, and Round Lake, in the Gunnison consolidated school district." Notice of the proposal of the board to issue the bonds was given by the clerk.

In pursuance of the order of the board an election was held on the question of the issuance of the bonds, which resulted in a large majority voting for the issuance of the bonds. The election was held at three places, apparently private stores situated respectively somewhere in the towns of Gunnison, Deeson, and Round Lake. The voting places where the election was held were not designated by the board of supervisors or the election commissioners as the place or places at which the election was to be held.

It appears conclusively that the election was not held at the schoolhouse of the consolidated school district, nor was it held at a convenient place designated by the trustees of the school. In fact, it seems that there was no schoolhouse of the consolidated school district at which the election could have been held, and no other place was designated by the trustees of the school or the board of supervisors.

The decisive point in the case is whether or not the election, under the circumstances, was valid, because the validity of the bonds depended upon the validity of the election authorizing their issuance.

The authority granted by the legislature to create consolidated school districts and to issue bonds for the erection of school buildings therein depends entirely upon the statute (chapter 184, Laws of 1914; chapter 194, Laws of 1916; Hemingway's Code, section 4004), and, unless the provisions of the act be substantially complied with, the power granted cannot be exercised; and therefore, if the election was not held at the place provided by the statute, it is void.    We here set out the act of the legislature (chapter 194, Laws of 1916; Hemingway's Code, section 4004), which is as follows:

"That in any case where it becomes necessary to hold an election affecting any question to be submitted to the qualified electors in any consolidated school district in this state, as now provided by the laws of the state forming such consolidated school districts, that such election shall be held at the schoolhouse of said district, or, if there is no schoolhouse, the election shall be held at a convenient place designated by the trustees of the school," etc.

The plain language of the statute leads us to conclude that the election was void, and the lower court erred in dissolving the injunction and dismissing the bill, because the election was not held at the schoolhouse of the consolidated district, nor was it held at a convenient place designated by the trustees of the school.    If there was no schoolhouse at which the election could have been held, which seems here to be true, then the trustees of the school should have designated a convenient place at which to hold the election; but it appears the trustees designated no place for the election, and that it was held somewhere in th district at places contrary to the provision of the statute.    The holding of the election at the designated place, as provided by the act, was essential to its validity, since the authority to hold the election rests solely upon the statute.    *Barrett* v. *Cedar Hill C. S. Dist.*, 85 So. 125.

It is unavailing to argue that the failure to hold the election at the place provided by the statute is a mere ir-

regularity, and that, since all of the qualified voters of the District had notice of the election, the irregularity is harmless and should not defeat the full and fair expression of the electors of the district. This reasoning cannot be upheld, because the election in this case could only be held by a special statutory power, the exercise of which must conform substantially to all of the affirmative mandatory requirements thereof. It was more than a mere irregularity; it was a clear failure to hold the election at the place provided by the special statute granting the authority for an election.

The decree of the lower court is reversed, and judgment here for the appellants.

*Reversed.*