LIDDELL ET AL. *v*. MUNICIPALITY OF NOXAPATER ET AL.

[92 South. 671. No. 22595.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Where jurisdictional facts exist in record, act of county board may be attacked directly, but not collaterally.*

   The powers conferred upon the county school board under section 7361, Hemingway's Code (Laws 1916, chapter 186), partake of the legislative character, and where the jurisdictional facts are shown to exist in the record of the county school board, its act can only be attacked for fraud in a direct attack on such act, and may not be attacked collaterally in a suit to confirm and validate a bond issue arising after the creation of such district.

2. SCHOOLS AND SCHOOL DISTRICTS. *Where election is held at time and place fixed by law on legal authority, mere irregularities will not vitiate it.*

   Where an election is held at a time and place fixed by law or by legal authority, mere irregularities in holding the election will not vitiate the election, and if it be not shown that the result would have been different if such irregularities had not occurred, the courts will not annul such election nor declare void acts authorized thereat.

APPEAL from chancery court of Winston county.
HON. T. P. GUYTON, Chancellor.

The Municipality of Noxapater was declared a separate school district by the Board of Mayor and Aldermen, and certain territory was added and petitions and order of annexation made and proceedings had for issuance of bonds for agricultural high school district, and W. S. Liddell and others filed their protest against the confirmation and validation of such bonds. From a decree validating the bonds the protestants appeal. Affirmed.

*H. H. Rodgers,* for appellant.

As shown in the assignment of errors in this cause, there is nothing affirmatively shown in the evidence that

the municipality of Noxapater had existed two years as a separate school district, and this must be affirmatively shown before such presumption can arise; and on the other hand said record of evidence does show that its attempted organization of a separate school district did not conform to the mandatory requirements of the statute. The petition, does not show affirmatively, nor in contemplation of law that the petitioners live in the district to be added, nor a majority of the qualified electors in the territory asked to be added, signed to the petition as required by law.

Nor does the petition show, nor the order of the school board, that a majority of the qualified electors of the territory, signed said petition, nor does it show that the order or petition had been approved by the trustees of the school district as required by section 7361, Hemingway's Code; this is a mandatory statute that any part of a county or counties adjoining a municipality which is a separate school district, may be added to such school district by the county school board upon petition of a majority of the qualified electors of the territory proposed to be added, provided such petition shall have been approved by the trustees of the separate school district. Now there is no evidence in this record that the trustees of the separate school district have approved in any way, the petition or petitions praying to be added to the Noxapater separate school district. The evidence shows beyond question that these trustees were never called upon to approve any order or petition that the territory in question be added to the Noxapater separate school district. One of the mandatory requirements is that it is a part of a territory adjoining a municipality which is a separate school district, petitioning the county school board by a majority of the qualified electors, of the territory proposed to be added. Now where is the evidence that shows that there was a majority of the qualified electors?

Well, as there may be some confusion about a majority of the qualified electors, we will only argue the facts, that the trustees did not approve of the petition filed in this behalf. Not only must the petition have a majority of the qualified electors, but it must have the approval of the trustees of the separate school district that is desired to be added. As you understand they cannot complain of collateral attack in this behalf, because the court opened up all the avenues of attack upon the theory that when the municipality undertook to validate the bond issue, then it was necessarily their duty to show all of the affirmative facts needful, and necessary to be done to validate the bonds; that is the municipality must show that from the petition down to the issuance of the bonds, that every legal requirement must have been conformed to as required by law, and for the further fact that all of this jurisdictional authority necessarily obtained in the court of chancery when the cause was submitted to them upon the validation of said bonds, and there is not one syllable of evidence in all this cause which shows that the trustees of this separate school district undertook to approve the petition to add territory filed and passed upon by the school board, and further, they could have only approved of these petitions by writing upon said petitions or upon a minute somewhere in some record, and the very order of the school board itself does not say that the trustees approved the petition, which says as follows: "And having been informed by the county superintendent and the superintendent of the Noxapater graded school and agricultural high school that said petition had been approved by the board of trustees of the Noxapater graded school or municipal district school as required by the school law of Mississippi of 1916. The order itself as is here shown, does not show that the trustees of the separate district approved said petition, but on the other hand did show that they did not, but that the county school board had understood from hearsay evidence from the

county superintendent and from the superintendent of
Noxapater graded and agricultural high school (that
said trustees had approved the petition). It does not
say what had been approved by the board of trustees
of the Noxapater graded school, or municipal graded
school. No attempt whatever having been made by
the·trustees of the separate school district to approve
the petition as require in Hemingway's Code, section
7361, chapter 186, T. R., page 5, while in said order
of the board of education it affirmatively shows that
the petition for said territory to be added to the
the Noxapater separate school district was not approved
by the trustees as required by Hemingway's Code, 7361.
That was one of the necessary affirmative facts that had
to be shown by the appellees in this case, and they failed
to show it, as all the questions were open upon this hear-
ing upon the application of the appellees to validate said
bond, and this the very foundation upon which the dif-
ferent orders were taken, the petition itself was not ap-
proved by the trustees as required by law; hence this
jurisdictional fact was not shown and the whole struc-
ture built upon it must necessarily fall. There is no
collateral attack in this behalf as was in the *Dye* v. *Brew-
ton* case, — So. 761, and the above case went to the limit
upon the question of a collateral attack, but it settles one
thing clearly that there was a list made, or a registration
made of the qualified electors of the Sardis district as
made and provided for under statute 7361, Hemingway's
Code, the later part of same being here copied bearing
upon this point: "For the purpose of an election on a
question pertaining to schools, such municipality shall
cause the qualified electors in such added territory to
be registered in like manner as those within the corporate
limits and governed by the same laws as far as appli-
cable." On page 762, S. O. I. B. this language is used
in said opinion: "There is a further contention that the
bond election is void because certain persons living out-
side of the town of Sardis, but within the separate school

district, were permitted to vote without being properly registered. The clerk of the board of aldermen was directed by order of the board to register those voters who lived within the district but outside the corporate limits of the town, and who desired to register, and participate in the election. In doing this the clerk, it appears, procured and used a blank book upon which he registered all persons duly presenting themselves for registration, and whom he decided were qualified electors and entitled to participate in the bond election. There was an effort to show that this registration was irregular in that the proper books were not used by the clerk and the proper oath administered.

Those favoring and those opposed to the bond issue took part in the election. Many of the voters were challenged but it seems that the legality of the registration was not raised until the present litigation. There was no showing that any of the voters who registered and took part in the election were not qualified electors under the general election law of the state. Now in the present case there was no registration made of the qualified electors in the territory attempted to be added.

It is no collateral attack, but is a question of the original validators being required to show affirmatively the jurisdictional facts necessary to validate said bonds, and we submit, with confidence, that this failure to register the qualified electors within the attempted added district is fatal.

Now as to the proposition of holding the election: the Newton county case recently decided by this court, which we have not at hand at this moment, held that the election was void because it was not held at the school house; instead said election was held at the school house, but there was no registeration list made up as is required by law, sec. 7363, Hemingway's Code; neither was there any preparation made to hold said elections by booths, or private places being fixed for the electors to vote, as required by law; neither was there any lists

made by the election commission, segregating the delinquents from the legally qualified electors, nor was the pole book purged, as made and provided for by law in such cases. Now there was not a majority of the qualified electors voting in said election, voted for said bond issue as shown. We submit with confidence this whole case upon the errors assigned, and the propositions pointed out in the record, and we feel that this case should be reversed, and judgment entered for the appellants for the reasons herein given.

*Edward M. Livingston,* for appellees.

Replying to the brief of counsel for appellants, we desire to call the court's attention to the fact that this bond issue is for a municipal separate school district and is not a consolidated school district. Counsel seems to lose sight of the fact that these bonds are issued under an entirely different law from that of a consolidated school district. The bonds in question in this litigation were issued under section 7363, Hemingway's Code, and other laws pertaining to municipal separate school districts. There is no provision in the section just referred to nor in any other section or chapter of the laws of Mississippi requiring an election to be held in the school house of the district, in case of an election for bonds in such district. Such is not the case, however, in the issuance of bonds for a consolidated school district, because the statute expressly provides that the election shall be held in the school house in such districts.

The case of *Boutwell* v. *Board of Supervisors,* 91 So. 21, was a consolidated school district, operating under the laws governing consolidated school districts, and therefore, has no application in this case, for the reason that the statutory requirement for the holding of elections in consolidated school districts are just as different from the requirement of holding elections in municipal separate school districts as are those of holding elections

in road districts different from that of drainage districts. Every case cited in the reply brief of appellants, deals with consolidated school districts and, therefore have no application in this case.

Chapter 179, Laws of 1918, provides, among other things, the following: "The mayor and board of aldermen of such municipality may also levy a tax on the entire school district, including added territory to erect, repair and equip school buildings including teachers' homes, and may issue bonds of the separate district for that purpose in the manner provided in the chapter on municipalities."

"Before providing for the issuance of any bonds, the board shall publish notice of the proposal to issue the same in a newspaper published in the municipality, or having a general circulation therein if none be there published, for three weeks next preceding; and if, within that time, twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued, unless authorized by a majority of the electors voting in an election to be ordered for that purpose. All the expenses of preparing the bonds, publishing notices, and holding such elections shall be paid out of the municipal treasury." Section 5978, Hemingway's Code.

The statutes just cited fixes the method of issuing bonds in municipal separate school districts, and there is not even an intimation in the statute, nor in any other statutes, that the election shall be held in the school house of the district. It is, therefore, not a jurisdictional fact that the orders should show the election to have been held at any specific place. It is simply necessary for it to be held in compliance with the laws with reference to the issuance of bonds in municipalities, which we submit, was done in this case.

In the trial in the lower court counsel did not challenge the legality of the election specifically, no certain and definite grounds of challenge being alleged in the

exceptions, the learned chancellor very properly excluded the testimony proposed to be introduced on questions not raised in the pleading, and it is not the policy of this court to go outside the record and consider questions not specifically raised in the pleadings.

The exceptions contain no allegation that the school building in Noxapater is not the usual place of holding municipal elections, and so far as known it is the customary place of holding the same, and we submit with candor that there is not a single question raised in the original brief, nor the reply brief of counsel for appellants showing the election to have been illegally held.

We submit that every statutory requirement with reference to the issuance of the bonds here undertaken to be validated were fully met and the order passed by the school board of Winston county and all orders passed by the board of mayor and aldermen of the town of Noxapater were regular and legal, and further that the chancellor was correct in his decree validating the bonds and should be sustained.

ETHRIDGE, J., delivered the opinion of the court.

In April, 1907, the municipality of Noxapater was declared to be a separate school district by the board of mayor and aldermen by an order entered upon the minutes of the board to that effect. On the 7th of June, 1916, an ordinance correcting these minutes of April 10, 1907, was adopted, in which order it was recited that the call for said special meeting was duly served as required by law, but through an oversight was not incorporated in the minutes. Certain territory was added to the separate municipal school district in 1909, and in 1921, on May 9th, an order was entered by the county school board, adding certain territory to the municipal separate school district, and on June 6, 1921, further territory was added. The order annexing this last territory was made under section 4533, Code of 1906, as

amended by chapter 186, Laws of 1916 (section 736, Hemingway's Code), which section reads as follows:

"Any part of a county or counties adjoining a municipality which is a separate school district may be added to such district by the county school board upon petition of a majority of the qualified electors of the territory. proposed to be added, provided such petition shall have been approved by the trustees of the separate district."

The petitions for the annexation of the territory added in 1921 did not contain the formal statements that the petitioners constituted a majority of the qualified electors of the district, nor did they state that the petition had been approved by the trustees of the separate school district, but the board in its order annexing the said territory recited:

"Having heard the said petition read and the names of the qualified electors signing same, and having found that a majority of the qualified electors in the said territory, described section by section in said petition, had signed the said petition, and having been informed by the county superintendent and the superintendent of the Noxapater graded school and agricultural high school that said petition had been approved by the board of trustees of the Noxapater graded school or municipal school district, as required by the School Laws of 1916, these facts having been heard by the board of education of Winston county in the office of the superintendent in said board of education finding that in their opinion same conformed to the law governing the addition of territory, upon the motion of J. L. Hurt, the same being seconded by T. J. Humphreys, said board of education by unanimous vote added the following territory," etc., setting out by proper description the territory so added.

The superintendent certified the order so annexing said territory, and the board of mayor and aldermen thereafter gave notice of their intention to issue bonds and order publication of such notice in the county newspaper, and ordered an election to vote upon such question

as to whether they should issue such bonds. The election commissioner gave due notice of the election, and appointed managers to conduct the same; and the election was held, resulting in seventy-four votes for the bonds and seventy votes against the bonds, which result was certified by the election commissioners and entered upon the minutes of the board of mayor and aldermen. They thereupon passed an order reciting all the jurisdictional facts, and ordered the bonds issued in the sum of twelve thousand dollars for the purpose of erecting, repairing, and equipping school buildings for the district. The proceedings were thereupon certified to the state bond attorney, who examined the same and rendered his' opinion that the issue of the bonds was legal in all respects. This opinion was filed with the chancery clerk on the 10th day of August, 1921, and notice given the chancellor under the provisions of chapter 28, Laws of 1917, Extra Sess., and the chancellor entered an order, fixing the 27th day of August, 1921, for a hearing at the courthouse of the county on said day. Thereupon notice was published to the taxpayers of such district of such hearing, and that objections, if any, must be filed on or before that date. Thereupon the appellants filed their objections and protests against the confirmation and validation of said bonds, in which it was urged that the petitions for the added territory did not have a majority who were qualified electors in the added territory, and that the board did not investigate carefully whether said petition contained a majority of the qualified electors of the district or not. And that their order annexing said territory was void, and that the order passed by the school board is void, and that the petition was not approved by the trustees of the separate school district.

The contestants also attack the proceedings because of the irregularities held in conducting the election, contending that the county election commissioners did not revise the pollbooks as they ought to have done, and

that there was no voting booth and no proper list of registered voters made up for the said special election. Much evidence was taken in reference to these matters, and the chancellor entered his decree validating the bond issues, and from said decree this appeal is prosecuted.

In our opinion this appeal is settled by *Dye* v. *Mayor, etc., of Town of Sardis,* 119 Miss. 359, 80 So. 761. The irregularities if such there be, in creating the separate school district is a matter that should be settled by a direct attack upon these orders, or by appeal where an appeal is granted. The order of the county school board stated the jurisdictional facts, and under statutory schemes creating such districts as the one here involved the court is only concerned with the question as to whether the board had proper jurisdiction of the matter before it. The power partakes of the legislative character to be exercised by the board upon the existence of certain conditions prescribed by law; and, where the jurisdictional facts are shown to exist, the board's finding is conclusive, unless the court has been specifically given power to review such question. The only power to review the action of the county school board in this specific instance which we have found is contained in section 91, Code of 1906 (section 73, Hemingway's Code), which reads as follows:

"Like proceedings as provided in the last section may be had to review the judgments of all tribunals inferior to the circuit court, whether an appeal be provided by law from the judgment sought to be, reviewed or not."

The record before the county board contained in the record before us, recited these jurisdictional facts. The facts for its determination were found in favor of the annexation of the territory. It had jurisdiction of the question, and under a *certiorari* the court will not look beyond the record, but will try the case upon the record. If the record is fraudulently made up, it would have to be attacked for fraud at the proper time and before the

proper court. So far as mere irregularities in holding the election is concerned, if any such irregularities exist in fact, it would not avoid the election under the authority of *Hatten* v. *Bond,* 112 Miss. 590, 73 So. 612; *Shines* v. *Hamilton,* 87 Miss. 384, 39 So. 1008; *Johnson* v. *Board of Sup'rs of Yazoo County,* 113 Miss. 435, 74 So. 321; *Pradat* v. *Ramsey,* 47 Miss. 24.

The appellants rely on *Boutwell* v. *Board of Supervisors* (Ala. Sup.), 91 So. 12, and *Barrett* v. *Cedar Hill Consolidated School District,* 123 Miss. 370, 85 So. 125, and *Edward* v. *Board,* 124 Miss. 165, 87 So. 8; but those cases dealt with the consolidated school district, which fixed the place at which the election must be held, which is limited by the terms of the act to the consolidated schools and goes to the jurisdictional questions as to holding elections, one of the essentials of which is that the place fixed by statute must govern where the statute fixes a place. The statute in the present case does not fix a specific place at which the election shall be held; presumably it was held at the proper place, and, if so, mere irregularities in conducting the election will not avoid it, unless it be shown affirmatively that the result would have been changed, and it is not every irregularity that will avoid an election. It is one thing to attack the creation of a school district and another thing to attack the acts done by the district after its creation, and unless the act creating the district is void it cannot be brought in question in a subsequent proceeding, unless some positive statute is violated.

We think the chancellor was correct in validating the bond issue, and the judgment will be affirmed.

*Affirmed.*